### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### OBERLE–JORDRE COMPANY, DIVISION OF the BISHOPRIC PRODUCTS COMPANY, Respondent.

### No. 84–5920.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1985.

Decided Nov. 26, 1985.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Karen Cordry, argued, Christian Schumann, Ann Jones (LEAD), for petitioner.

Harold S. Freeman, Robert E. Kaplan, argued, Dinsmore & Shohl, Cincinnati, Ohio, for respondent.

Before MARTIN and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The National Labor Relations Board seeks enforcement of its order against Bishopric for violations of 29 U.S.C. §§ 158, 160, for discharging a union member.

The Oberle-Jordre Company, between 1947 and March 1, 1982, was engaged in a

business of installing boilers and other equipment at various sites throughout the United States. On March 1, 1982, Bishopric Products Company of Cincinnati acquired certain of their operations and assets. As a consequence of this acquisition many employees were laid off. A few employees, however, requested employment on an "as needed" basis. Robert Nickell, a member of Teamsters Local No. 135, was among this group.

The violation in this case occurred on February 28, 1983. Several other alleged violations occurred before this, but were not charged because they were barred by section 10(b) of the Act, 29 U.S.C. § 160(b). These occurrences provide, however, the background in which the complained of violation took place. The first incident occurred in July, 1982, when Paul Oberle, Sr. advised Robert Nickell that the company was moving across the state line and would leave the Teamsters in Ohio. He suggested that Nickell go to the union hall and withdraw from the union. Nickell replied that he would "check on it." The following day Nickell went to the union hall and told a union representative what Oberle had said. The representative told Nickell that Oberle had acted illegally. Nickell relayed this message to Oberle the next day, and Oberle became angry and told Nickell he should have kept his mouth shut.

Between July and December 1982 Nickell was approached several times by Ron Sprenkle, Nickell's immediate supervisor, and asked if he had decided whether or not he was going to withdraw from the union. On the first occasion Sprenkle told him if he withdrew from the union and stayed with the respondent, he would receive $6.00 per hour in wages and no benefits. In a second conversation, Sprenkle told Nickell that if he would withdraw from the union he would receive $8.00 per hour and some insurance. At the time, Nickell was receiving $11.20 per hour under the Teamster's contract. In November, Sprenkle asked Nickell again what he had decided concerning withdrawal from the union. Nickell replied that he could not decide.

On the date of the violation, February 28, 1983, Sprenkle and Paul Oberle, Jr., the Vice-President's son, visited Nickell's home. Sprenkle handed Nickell a discharge slip which stated the reason for Nickell's discharge was "Lack of Work. Teamster service not required." Sprenkle then, for the last time, asked Nickell whether he had decided to withdraw from the union. Nickell replied, "It don't really matter. You're not going to work me anyway, are you?" Sprenkle replied, "No."

In March the union filed this charge. After a hearing, the administrative law judge determined a violation occurred when Nickell was interrogated regarding his withdrawal from the union.

Both sides agree that we are limited in our review. The facts are almost admitted and we are left to determine if they support the finding of the Board. We believe they do.

"Substantial evidence" is "more than a mere scintilla ... [and is generally accepted to] mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion...." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). The February 28th interrogation took place within a scenario of prior interrogations that were accompanied by explicit promises of continued employment conditioned on Nickell's responses. While these prior interrogations occurred outside the six month time limitation imposed by section 10(b) of the Act, 29 U.S.C. § 160(b), the evidence concerning them "shed[s] light on the true character of matters occurring within the limitations period." *Local Lodge 1424 IAM v. NLRB*, 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960). It was not unreasonable for the Board to conclude that the interrogation's probable effect was to unlawfully coerce the employee within the meaning of 29 U.S.C. § 158(a)(1).

 On the discharge issue it is well established that an employer violates section 8(a)(1) and 8(a)(3) if it discharges because of union membership. *NLRB v.*

*Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983). In these circumstances the employer's motive becomes the focal point. In *Transportation Management*, the Board's analytical framework for resolving the question of an employer's motive for deciding to discharge an employee was approved. The Board established its framework in *Wright Line, A Div. of Wright Line Inc.*, 251 N.L.R.B. 1083, 1089 (1980), *enf'd. on other grounds*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). It requires the General Counsel show the employee's protected activity formed a motivating factor in the employer's decision. Once such a showing has been made, the employer's decision to discharge constitutes a violation of the Act unless the employer establishes that the decision would have been made absent the protected activity. *NLRB v. E.I. duPont deNemours*, 750 F.2d 524, 529 (6th Cir. 1984).

The record in this case established that Nickell's continued affiliation with the Teamsters formed a motivating factor in the employer's decision. The respondent could have simply laid off Nickell following the March 1982 acquisition, but seemed to value his work and attempted to retain him as an employee. Several attempts were made to get him to withdraw from the union with no success. As a last resort they terminated him on February 28, 1983.

We feel that upon consideration of the record as a whole there is substantial evidence to uphold the decision of the Board.

The order of the Board is enforced.

WELLFORD, Circuit Judge, dissenting.

Robert Nickell was the single remaining member of the original Teamsters Local Union bargaining unit shortly after the reorganization of Oberle-Jordre following its acquisition by Bishopric Products Company (Bishopric). He asked Bishopric to allow him to remain on the payroll and work on an "as needed" basis. Nickell worked approximately half-time or less over the last year before his lay-off. (A little over 1,000 hours from March, 1982 until latter February, 1983.) He was given what little truck driver-mechanics duties remained, but ultimately Bishopric decided to contract out this work. During January and February, 1983, Nickell averaged less than 10 hours of truck driver-mechanic work.

The Teamster contract was to come to an end February 28, 1983, and Bishopric made it clear to the union that it was not interested in negotiating about any extension and that the contract would then terminate. In my view, Bishopric clearly had no obligation to deal with the union as of this termination date, and this was conceded by N.L.R.B. counsel at oral argument. (Indeed, with only one employee in the unit, there was no need for any *collective* bargaining during the last months of the contract.)

Nickell's union membership, then, as of February 28, 1983, was completely immaterial to his continued employment. Respondent advised the union during February, 1983, that it would terminate Nickell at the end of the month. Nickell, in fact, applied for unemployment benefits as of February 15, 1983, signifying his availability in the marketplace to work after that date.

It was consistent with this state of facts that on February 28 respondent through its agents handed Nickell a termination notice on the grounds, "lack of work, Teamster service not required." Nickell observed that whether or not he withdrew from the union "don't really matter, you're not going to work me anyway." Union membership was immaterial, because respondent had already decided to terminate an unneeded employee, as it had the right to do.

Even if Nickell's membership in the Teamster's union formed some basis for respondent's decision, Bishopric had a legitimate basis for terminating Nickell on February 28, 1983—to avoid unnecessary and time-consuming further dealings with a union when there was only one person in the bargaining unit. The ALJ in this case found that "Respondent treated Nickell with ultimate fairness through January, 1983." (J.A. 24.) He further concluded:

[R]espondent believed that since it had ·so little Teamster unit work and did not intend to deal with the Teamsters in the future, it had no intention of paying the Union's new wage scale.

(J.A. 28.)

The ALJ erroneously, in my view, also concluded that it was "irrelevant that Respondent would not be obligated to bargain a new contract for the one man unit or to pay a negotiated wage." (J.A. 28.) Contrary to the majority's assertion, the Board here made *no Transportation Management Corp.*[1] or *Wright Line*[2] analysis here. At the very least, this case should be remanded for such an analysis by the Board. It would hold that there is no substantial evidence in this case to uphold the decision of the Board and to require respondent to offer Nickell back pay and full reinstatement to a position which was found unnecessary and which was not shown to have been filled after Nickell's termination.

---

1. *N.L.R.B. v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

2. *Wright Line,* 251 N.L.R.B. 1083 (1980) *enf'd on other grounds,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).