**Darel E. MOON, Petitioner–Appellant,**

**v.**

**TRANSPORT DRIVERS, INC. and U.S. Department of Labor, Respondents–Appellees.**

No. 86–3829.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 28, 1987.

Nov. 3, 1987.

Jerry Semer, Fremont, Ohio, for petitioner-appellant.

Barbara Werthmann, Lead Counsel, U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., for respondents-appellees.

Matthew A. Hurd, Richard J. Hickey, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Transport Drivers, Inc.

Before MARTIN and BOGGS, Circuit Judges; and WISEMAN, Chief District Judge.[*]

PER CURIAM.

Darel E. Moon attacks the Secretary of Labor's decision denying his claim of retaliatory discharge by Transport Drivers, Inc. under section 405(a) of the Surface Transportation Assistance Act, 49 U.S.C. § 2305(a) (1982). We affirm.

I

In October 1981, Transport Drivers, Inc. ("Transport"), a transportation personnel leasing business, hired Darel Moon as a truck driver and assigned him to Libbey–Owens–Ford Glass Company ("Libbey") to transport truckloads of glass between Libbey's various facilities. He frequently traveled between Libbey's Rossford plant in Ohio and its Collingwood facility in Ontario, Canada. Moon remained with Transport until fired on March 16, 1984.

Shortly afterwards, Moon filed a complaint with the Department of Labor, alleging that he had been fired by Transport in retaliation for his complaints about safety defects in the trucks he drove. The Department's Regional Administrator for Ohio investigated his complaint pursuant to section 405 of the Surface Transportation Assistance Act ("STAA"), 49 U.S.C. § 2305 (1982). He concluded that Moon was fired

---

[*] The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation.

for falsifying his duty status logs, not in retaliation for making safety complaints. Moon requested an administrative hearing.

Before the Administrative Law Judge, Moon presented evidence to show that he did not falsify his duty status logs, and that Transport had discharged him in retaliation for making safety complaints. At the close of Moon's case in chief, Transport moved for a "directed finding," arguing that Moon had failed to demonstrate that there was a causal connection between his safety complaints and his discharge. The ALJ deferred ruling on the motion and instructed Transport to put on its case in defense. After hearing all but one of Transport's witnesses, the ALJ pretermitted the hearing and granted Transport's motion for a directed finding. Relying solely on Moon's evidence—the ALJ struck Transport's case from the record without objection—the judge concluded that Moon had failed to establish a prima facie case of retaliatory discharge under section 405(a) of the STAA. Moon had not made out a prima facie case that he was "discharged due to his protected activity of complaining about equipment safety."

According to the ALJ, Moon made a number of oral complaints to Merle Snyder, his supervisor at Libbey, and to Dennis Duffy, Vice President of Operations at Transport, thereby engaging in protected activity under the STAA. However, there was no evidence that such activity was the catalyst for his discharge. The ALJ found that Transport, through Libbey, encouraged complaints by holding periodic "bitch sessions," during which drivers could complain about safety problems in the trucks they drove. He noted that Moon offered no evidence to show that either Libbey or Transport ever objected to or were irritated by his complaints regarding equipment safety. The ALJ also observed that even if Moon were correct that he did not falsify his duty status logs, there was "no evidence which would indicate that [Transport] did not also believe that the logs were not accurate." He continued,

> Indeed, the Plaintiff [Moon] acknowledged that he had received two earlier warnings concerning log inaccuracies,

that his logs had been criticized at a driver's meeting, and that at a driver's meeting as late as March 4, 1984, he was warned verbally about future violations of [Department of Transportation] regulations regarding his log records. (citations omitted).

Moon appealed to the Secretary of Labor, who concurred with the ALJ that Moon did not make out a prima facie case. The Secretary also concluded that even if Moon's evidence were sufficient to establish a prima facie case, Transport had "articulated a legitimate non-discriminatory reason for discharging [Moon]—falsification of logs—and [Moon] ha[d] not shown, by a preponderance of the evidence, either that that reason [was] pretextual, or on the record as a whole, that Transport Drivers was motivated at least in part by discriminatory intent." (citations omitted).

## II

Section 405 of the Surface Transportation Assistance Act "was enacted to encourage employee reporting of noncompliance with safety regulations governing commercial motor vehicles." *Brock v. Roadway Express, Inc.,* — U.S. —, 107 S.Ct. 1740, 1745, 95 L.Ed.2d 239 (1987). "Congress recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against retaliation for reporting these violations." *Ibid.*

Section 405(a) prohibits discharging an employee for filing any complaint questioning commercial motor vehicle safety. It reads in full:

> No person shall discharge, discipline, or in any manner discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because such employee (or any person acting pursuant to a request of the employee) has filed any complaint or instituted or caused to be instituted any proceeding relating to a

violation of a commercial motor vehicle safety rule, regulation, standard, or order, or has testified or is about to testify in any such proceeding.

49 U.S.C. § 2305(a) (1982).

The parties agree that Moon's claim of retaliatory discharge under section 405(a) is governed by the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Adapting *McDonnell Douglas* to the STAA, the plaintiff has the initial burden of establishing a prima facie case of retaliatory discharge. Once a prima facie case is established, one which raises an inference that protected activity was the likely reason for the adverse action, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant is successful in rebutting the inference of retaliation, the plaintiff bears the ultimate burden of demonstrating by a preponderance of the evidence that the legitimate reasons were a pretext for discrimination. *See Wrenn v. Gould,* 808 F.2d 493, 500–01 (6th Cir.1987); *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986).

■ To establish a prima facie case of retaliatory discharge, Moon must prove: 1) that he engaged in protected activity under the STAA; 2) that he was the subject of adverse employment action; and 3) that there was a causal link between his protected activity and the adverse action of his employer. *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir.1986) (citation omitted); *Jackson,* 783 F.2d at 54.[1]

In reviewing the Secretary's decision, we must determine whether it is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

sion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See* 49 U.S.C. § 2305(d)(1) (1982). This court may not relitigate the case *de novo,* resolve conflicts in evidence, or decide questions of credibility.

### III

There is no dispute that the first two elements of a prima facie case of retaliatory discharge have been established: Moon has engaged in protected activity and his employer has taken adverse employment action against him. Thus, we must decide whether substantial evidence supports the Secretary's conclusion that Moon failed to show that his discharge was causally related to his safety complaints.

■ In support of his claim, Moon argues initially that he was fired less than two weeks after he had made a vocal complaint at the drivers' meeting of March 4, 1984.[2] Certainly, the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection. *Wrenn,* 808 F.2d at 501 (citing *Burrus v. United Telephone Co.,* 683 F.2d 339, 342 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982)); *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 731–32 (9th Cir.1986); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 601 (11th Cir.1986); *Mitchell v. Baldrige,* 759 F.2d 80, 86 & n. 6 (D.C.Cir. 1985) (and cases cited therein). However, temporal proximity alone will not support an inference in the face of compelling evidence that Transport encouraged safety complaints. *See Cooper,* 795 F.2d at 1272 (citing *Brown v. ASD Computing Center,* 519 F.Supp. 1096, 1116–17 (S.D.Ohio 1981), *aff'd sub nom. Brown v. Mark,* 709 F.2d 1499 (6th Cir.1983)). The record shows that Transport, through Libbey, periodically held "bitch sessions," during which

---

1. In *Wrenn,* 808 F.2d at 500, a panel of this court stated a fourth factor: the employer knew of the plaintiff's protected activity. This factor is met here because Dennis Duffy, Transport's Vice President of Operations, was present at two drivers' meetings in which Moon made safety complaints.

2. By his own admission at the administrative law hearing, however, Moon's last complaint was in January or early February, at least one month before his dismissal on March 16, 1984.

Moon and other drivers were invited to air their safety concerns. Moon testified that he felt free to call his superior at Libbey to complain about vehicle problems, and admitted receiving a replacement truck whenever he voiced such concerns.

Moon's argument is further weakened by his testimony that, before he was fired, Transport warned all employees about improper log entries. Moon testified that Transport repeatedly emphasized, at the drivers' meetings in which he attended, the importance of maintaining complete and accurate logs. Transport warned its drivers, including Moon, that continued log inaccuracies could result in "severe discipline, up to and including termination." Indeed, Moon admitted knowing former Transport employees who had been fired or suspended for log problems. *See* B. Schlei & P. Grossman, *Employment Discrimination Law*, Ch. 15 (2d ed. 1983), at 558–59 ("Proof that similarly situated nonprotestors were disciplined just as harshly for the same infraction suggests nonretaliation."). *Cf. DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987) (causal relationship shown in part by evidence that plaintiff's fellow employees were not disciplined for engaging in identical, allegedly improper behavior). Moreover, Moon has not presented any evidence that he initially received these warnings at the time, or shortly after, he began to make safety complaints. *See* B. Schlei & P. Grossman, *supra*, at 559. *Cf. Jordan v. Wilson*, 649 F.Supp. 1038, 1061 (M.D.Ala. 1986) (plaintiff's employment rating declined as soon as she engaged in protected activity); *Melchi v. Burns International Security Services, Inc.*, 597 F.Supp. 575, 584 (E.D.Mich.1984) (employer's investigation of plaintiff's alleged performance deficiencies began at or about the same time plaintiff engaged in protected activity). Based on the foregoing, the Secretary was entitled to discount the limited period of time between Moon's last safety complaint and his discharge.

Second, Moon contends that John Lane, a fellow driver who voiced similar safety complaints, was fired shortly after Moon. This fact adds little to Moon's case. The record is not entirely clear why Lane left Transport's employ. Lane admitted during cross-examination that he was recalled because of "unsatisfactory work performance" and offered work with another client, which he refused to take. Even if this amounted to a firing, there is no support in the record that his termination two months after the March 4th drivers' meeting was causally related to his safety complaints. In addition, the Secretary could have relied on the fact that Moon failed to show that any driver, other than Moon and Lane, who complained about truck problems was fired or subject to retaliatory action. *See* 3 A. Larson & L. Larson, *Employment Discrimination* § 87.31 (1986), at 17–123 ("The employer's position is also bolstered by evidence that, although other employees had made similar protests ..., there was no pattern of retaliation against such employees.").

Next, Moon argues that since he can prove his logs are accurate, Transport's reason for firing him must be fabricated. The relevant inquiry is the employer's perception of his justification for the firing. Without more, Moon's contention that his logs were accurate, if proven, could give rise to an inference, sufficient for a prima facie case, that Transport fired Moon for making safety complaints. *See Jordan*, 649 F.Supp. at 1061.[3] On this record, however, the Secretary reasonably concluded that Moon failed to offer sufficient evidence that his logs were accurate. For Moon to receive the benefit of the inference at this stage of proof, he must do more than simply assert that his logs are accurate. There is substantial evidence in the record to support the Secretary's conclusion. In particular, the record during Moon's case in chief shows that Transport reprimanded and suspended him for preparing improper logs. Moon admitted telling Libbey that he went into layover status at

---

**3.** In an appropriate case, Moon's evidence in support of his contention also would be relevant to show that Transport's legitimate, nondiscriminatory reason for discharging him was a mere pretext for discrimination.

6:00 p.m. on February 27, 1984, even though his log showed him driving at that time. His logs also placed him in Guelph, Ontario at 8:00 p.m. two days later, despite his admission to Libbey that he was with a fellow employee in London, Ontario some eighty miles away.[4]

We conclude that Moon has failed to raise an inference that his discharge was causally related to his safety complaints. The Secretary's decision that Moon failed to establish a prima facie case of retaliatory discharge under section 405(a) of the STAA is supported by substantial evidence.[5] Accordingly, the Secretary's decision is AFFIRMED.

---

**4.** In support of his prima facie case, Moon also contends that he received a safe driving citation. This fact has no bearing on whether he was fired for making safety complaints.

**5.** Because we conclude that Moon has failed to establish a prima facie case, we need not address either the Secretary's alternative grounds that Transport had a legitimate, nondiscriminatory reason for firing Moon, or Moon's due process contention that he was effectively denied the opportunity to present evidence that the reason was a mere pretext for discrimination.