**YELLOW FREIGHT SYSTEM, INC., Petitioner,**

v.

**Robert B. REICH, Secretary of Labor; and Willie W. Smith, Respondents.**

**No. 93–3488.**

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1994.

Decided June 24, 1994.

John B. Gamble, Jr. (briefed), Michael C. Towers, Roger K. Quillen (argued and briefed), Deborah C. Craytor, Fisher & Phillips, Atlanta, GA, for Yellow Freight System, Inc.

Ann Rosenthal, Bruce Justh, Jennifer U. Toth (argued and briefed), U.S. Dept. of Labor, Officer of the Solicitor, Washington, DC, Michael G. Connors, Office of U.S. Department of Labor, Regional Adm'r, Chicago, IL, for Robert Reich.

Phillip L. Harmon (briefed), Worthington, OH, for Willie W. Smith.

Before: KENNEDY, NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

Yellow Freight petitions for review of a decision of the Secretary of Labor finding that Yellow Freight violated section 405 of the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C.App. § 2305 (1988), by discharging over-the-road driver Willie Smith for making unscheduled rest stops when fatigued. Section 405(a) makes it unlawful to discharge, discipline, or discriminate against an employee because he or she files a complaint "relating to a violation of a commercial motor vehicle safety rule [or] regulation ..." Section 405(b) prevents an employer from discharging, disciplining, or discriminating against an employee "for refusing to operate a vehicle when such operation constitutes a violation of any Federal rules [or] regulations ... applicable to commercial motor vehicle safety...."

In his decision the Secretary discussed the evidence and each party's arguments and concluded that the administrative law judge (ALJ) who conducted the hearing on Smith's complaint correctly found that Yellow Freight violated section 405. We agree with this conclusion. Accordingly, we affirm the Secretary's decision and order.

## I.

Willie W. Smith, a truck driver with 26 years' experience, was hired as an "extra board" driver by Yellow Freight on February 6, 1988. An extra board driver has no scheduled route, but is dispatched to drive various routes on a day to day basis. Yellow Freight terminated Smith on November 6, 1989, following a disciplinary hearing, allegedly because of a poor work record evidenced by several reported incidents occurring between February 17, 1989, and November 1, 1989.

The three most controversial incidents involved Smith's refusal to drive while fatigued. The first of these occurred on August 2, 1989, when Smith pulled over shortly past midnight to take an hour and fifteen minute nap. Smith claimed that he had been driving for almost nine hours when he felt tired and stopped. He did not inform the dispatcher of this break, as is required by company work rules, but did note the stop in his travel log. Yellow Freight issued Smith a warning letter for "delayed freight," which threatened more severe disciplinary action if "a like offense occurs in the future." Smith filed a grievance letter with the company, arguing that his actions were protected by 49 C.F.R. § 392.3, which prevents a driver from operating a truck when his or her ability or alertness is so impaired by reason of illness or fatigue as to make it unsafe to begin or continue to operate a commercial vehicle. Yellow Freight did not respond to Smith's protest.

Yellow Freight sent a similar warning letter to Smith after he stopped to nap for forty-five minutes at 1:00 a.m. on the morning of September 23, 1989. Smith had been up for twenty hours and driving for eight when he stopped. He again failed to inform the dispatcher of this break, and again protested Yellow Freight's letter under 49 C.F.R. § 392.3.

Yellow Freight also reprimanded Smith after he refused a dispatch on October 17, 1989, because he was too tired to drive. Smith called in that day for a dispatch at 3 o'clock in the morning. He waited the entire day, and called in twice more. However, Yellow Freight did not get back to Smith until 8:00 p.m., after he had been awake for seventeen hours. Smith testified that he was too fatigued to accept a dispatch and knew he would be disciplined if he drove that day and

had to make a stop for fatigue. On October 18, Yellow Freight issued Smith a warning letter for refusing work. Smith again protested, arguing that Yellow Freight was coercing him to drive while fatigued in violation of Department of Transportation (DOT) safety regulations.

Smith received several other warnings from Yellow Freight related to his duties as a union steward, which required time consuming counseling sessions with fellow drivers. In his capacity as a steward, Smith was known to encourage fellow drivers to file grievances against Yellow Freight when they felt it had violated federal regulations. Although Yellow Freight permitted union activities at company terminals, it suspected that Smith was logging work hours improperly when performing union functions. Smith allegedly was logging 45 minutes for DOT mandated safety checks, a procedure that normally takes 15–30 minutes. Yellow Freight surmised that Smith was using the additional 15 minutes to talk about union issues with fellow drivers, and asked Smith to discuss company regulations with one of its managers. When Smith refused, the company issued a disciplinary notice. Similarly, Smith received a warning letter for "log falsification" after Yellow Freight accused him of logging 15 minutes too much driving time when he was actually talking to drivers, not working.

Yellow Freight issued two more "delay of freight" warnings when, after receiving a dispatch, Smith stayed in the terminal counseling drivers on union issues. Smith responded by filing a grievance for harassment based on his race (African–American) and union status with the state grievance committee. The committee ruled in Smith's favor, finding that union stewards are allowed to conduct business in the terminal for an unlimited amount of time.

Later that year, Smith and two other drivers received an "excessive absenteeism" warning for spending a week away from work while participating in a union sponsored event at Yellow Freight's Columbus terminal. The union failed to follow company rules, which require it to provide written notice forty-eight hours before a driver's absence for union activities. After top union officials contacted Yellow Freight, it agreed to rescind Smith's co-worker's warning letters. Yellow Freight did not revoke Smith's letter, however.

Yellow Freight sent various other warning letters to Smith. He received one for not eating lunch while exchanging trailers at a designated post and stopping for lunch two hours later instead. Yellow Freight sent two more letters when Smith's beeper was broken and Yellow Freight could not reach him for dispatch. Smith received a disciplinary "coaching session" after hitting a mailbox when leaving an Ohio terminal. Smith repaired the mailbox and there was no damage to Yellow Freight's truck and no expense to the company.

Yellow Freight discharged Smith after he received a speeding ticket in West Virginia in June, 1989. Smith was traveling 76 miles per hour in a 65 mile per hour zone. After refusing to sign the ticket because he thought it was an admission of guilt, Smith was taken to the police station and his truck was impounded. Smith eventually pled guilty to traveling 74 miles per hour, and paid a $5 fine; Yellow Freight had to pay a $75 towing fee to get the truck out of the impound lot. Yellow Freight investigated the matter because its truck engines are governed to run at a maximum of 62 miles per hour. The company concluded that to go 76 miles per hour, Smith had either to take the truck out of gear while going down hill, or allow the weight of the truck to push it past the governed speed. Smith filed a grievance protesting his discharge and the Ohio Joint State Committee, after a hearing, reduced the discharge to a three week suspension without pay.

## II.

On November 3, 1989, Yellow Freight held a formal disciplinary hearing where it reviewed all of the disciplinary actions taken against Smith and decided to discharge him. On April 27, 1990, Smith filed a complaint with the Secretary of Labor alleging that Yellow Freight violated sections 405(a) and (b) of the STAA.

### A.

The matter was referred to an ALJ who conducted hearings in which both parties presented witnesses and documentary evidence. In his "Partial Recommended Decision" the ALJ concluded that Smith had made out a prima facie case of violations, that Yellow Freight had offered non-discriminatory reasons for discharging Smith, and that on the whole record Smith had demonstrated by a preponderance of the evidence that Yellow Freight violated § 405 by discharging him for exercising his right to take breaks from driving when fatigued and in retaliation for counseling fellow employees about their rights under various laws and regulations.

The ALJ reviewed Smith's entire work record as shown by exhibits and testimony. He concluded that Yellow Freight would not have fired Smith for the damaged mailbox, the broken beeper, or the episodes in which he acted for the union. Rather, the ALJ found that Yellow Freight discharged Smith because of fatigue-related stops and refusal to accept a dispatch.

The ALJ, in a clear credibility finding, rejected Yellow Freight's claim that it discharged Smith for violating a company rule requiring drivers to report delays at the first opportunity. Smith admittedly did not report the late-night stops for naps on August 2 and September 23, 1989, though he did enter the stops in his driver's log. Yellow Freight sent warning letters to Smith on August 7 and September 26 stating that Smith "delayed freight" by taking extra breaks on August 2 and September 23. Neither letter referred to Smith's failure to call the dispatcher; instead, both warned Smith that he would be subjected to more severe disciplinary action for "delaying freight and equipment" in the future.

In its October 18, 1989, warning letter to Smith, Yellow Freight recited that Smith had declined to accept a dispatch on October 17 because he was too fatigued to come to work and requested "to be taken off the board." Without referring to any work rule unrelated to safety, the letter warned that any "future incidents of this nature" would result in disciplinary action, even discharge.

The ALJ found that Yellow Freight disciplined Smith on each of these occasions for exercising his right not to drive while suffering from fatigue. In addition to the three letters that mentioned only delay of freight and equipment, the ALJ considered other evidence indicating that Yellow Freight referred to specific work rules on other occasions when warning employees, including Smith, for infractions of such rules.

The ALJ also considered the possibility that Yellow Freight dismissed Smith for more than one reason. In such a "mixed motive" case, the employer has the burden of demonstrating that it would have taken the disciplinary action on the basis of a legitimate reason even if it had not also acted for illegal reasons. The ALJ concluded on the whole record that Yellow Freight did not carry this burden. After the ALJ's decision, by agreement of the parties, Yellow Freight reinstated Smith and guaranteed back pay if Smith should win on final appeal.

### B.

Even though the Secretary wrote a full opinion, we have set forth the ALJ's findings and conclusions in some detail because the Secretary adopted most of the ALJ's critical findings on motivation and causation. The Secretary concluded that while Yellow Freight may have "tolerated" brief coffee stops, it refused to permit longer delays necessitated by severe driver fatigue regardless of whether the resting driver notified a dispatcher or not. The Secretary felt that Smith's refusal to work on October 17 was largely responsible for Yellow Freight's decision to terminate him. The warning letter of October 18 was the only one that told Smith he might be discharged for future violations. The Secretary found that, in view of the long time that Smith was waiting to be dispatched on October 16, his refusal was clearly related to a safety factor.

The Secretary also held that Smith's complaints and protests raised issues under both subdivisions of section 405 and were "related to" safety regulations. In addition, the Secretary found that the complaints of both safety regulations violations and retaliation

for counseling other employees were timely. Finally, to the extent that this might be found to be a mixed motives case, Yellow Freight produced no evidence that it would have discharged Smith if there had been no safety-related incidents. In fact, the Secretary noted evidence that Yellow Freight did not discipline employees for violating similar non-safety-related rules.

### III.

The Supreme Court succinctly described the effect and purpose of section 405 of the STAA in *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987):

> Section 405 of the Surface Transportation Assistance Act of 1982, 96 Stat. 2157, 49 U.S.C.App. § 2305, protects employees in the commercial motor transportation industry from being discharged in retaliation for refusing to operate a motor vehicle that does not comply with applicable state and federal safety regulations or for filing complaints alleging such noncompliance.

*Id.* at 255, 107 S.Ct. at 1744.

Section 405 was enacted in 1983 to encourage employee reporting of noncompliance with safety regulations governing commercial motor vehicles. Congress recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against retaliation for reporting these violations. See, *e.g.,* 128 Cong.Rec. 32698 (1982) (remarks of Sen. Percy); *id.,* at 32509–32510 (remarks of Sen. Danforth). Section 405 protects employee "whistleblowers" by forbidding discharge, discipline, or other forms of discrimination by the employer in response to an employee's complaining about or refusing to operate motor vehicles that do not meet the applicable safety standards. 49 U.S.C.App. §§ 2305(a), (b).

*Id.* at 258, 107 S.Ct. at 1745.

■ In *Moon v. Transport Drivers, Inc.,* 836 F.2d 226 (6th Cir.1987), this court discussed the requirements for an employee to make out a prima facie case of a section 405 violation. The court described a prima facie case as "one which raises an inference that protected activity was the likely reason for the adverse action...." *Id.* at 229. An employee establishes a prima facie case by proving three elements: (1) that his employment engages him in protected activity; (2) that his employer took adverse employment action against him; and (3) that a "causal link" exists between his protected activity and the employer's adverse action. *Id.*

■ Once an employee establishes a prima facie case, the court makes its determination of liability by adapting the familiar Title VII *McDonnell Douglas* burden-shifting rules to the STAA. At this point, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant is successful in rebutting the inference of retaliation, the plaintiff bears the ultimate burden of demonstrating by a preponderance of the evidence that the legitimate reasons were a pretext for discrimination." *Id.*

■ In *Moon,* 836 F.2d at 229, we noted that we review the Secretary's decisions under the STAA applying a substantial evidence standard. A reviewing court must uphold the Secretary's legal conclusions "unless they are arbitrary, capricious, involve an abuse of discretion, or otherwise are not in accordance with law." *Yellow Freight System, Inc. v. Martin,* 954 F.2d 353, 357 (6th Cir.1992); 5 U.S.C. § 706(2). Finally, we accord deference to the Secretary's interpretations of the STAA, and will uphold such interpretations if "reasonable, consistent with the statutory mandate, and persuasive." *Id.* (citations omitted).

### IV.

We summarize the parties' arguments.

### A.

Yellow Freight makes three main arguments on appeal. First, it contends that the Secretary failed to apply the proper standard of review, adopted the ALJ's "faulty analysis of the facts," and substituted his business judgment for Yellow Freight's. Second, Yel-

low Freight asserts that the Secretary violated its due process rights by failing to notify it that Smith was charging a violation of section 405(a) as well as section 405(b). Third, Yellow Freight maintains that Smith's claim was barred by the STAA's 180 day limitations period and, consequently, that its motion to dismiss should have been granted.

### B.

Smith responds that the Secretary correctly held that he established a prima facie case and correctly applied the *McDonnell Douglas* analysis in finding that Yellow Freight violated section 405. The ALJ's treatment of the facts is supported by substantial evidence, and is not "faulty," according to Smith. Furthermore, Smith rejects Yellow Freight's contention that the Secretary substituted his own business judgment for that of the employer. In Yellow Freight's view, the Secretary held that implementation of the work rule requiring drivers to report safety breaks was a *per se* violation of section 405. A truer reading of the Secretary's decision, Smith says, reveals that the Secretary merely rejected Yellow Freight's contention that violation of the work rule was the "true reason" for Smith's discharge.

Smith responds to Yellow Freight's due process argument by asserting that the record fully supports the Secretary's finding that Yellow Freight had adequate notice well before the hearing that Smith claimed violations of section 405(a) as well as 405(b). As to the statute of limitations argument, Smith relies on the fact that he filed the complaint 172 days after his discharge. He maintains that limitations began to run from the date of the discharge on November 6, not from the dates of the three earlier disciplinary actions (August 7, September 26, and October 18 warning letters).

### V.

### A.

Yellow Freight's brief contains a lengthy discussion of the recent Supreme Court decision in *St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), where the Court clarified the effect of a finding that an employer's proffered reasons for disciplining an employee are pretextual. The Court held that a trial court that reaches this conclusion in a *McDonnell Douglas* analysis may not automatically find illegal discrimination based on this finding alone. An employer's *articulation* of legal reasons for disciplining an employee satisfies its burden of production, *id.* at ——, 113 S.Ct. at 2747, and the employee must then satisfy his or her burden of proving that the employer discriminated against the employee on a forbidden basis. The finding that an employer's proffered reasons for an adverse action are pretextual does not, standing alone, compel a finding in favor of the employee. *Id.* at ——, 113 S.Ct. at 2749.

We have no quarrel with Yellow Freight's interpretation of *St. Mary's.* The problem is that the *St. Mary's* rule does not come into play in this case. Neither the ALJ nor the Secretary held that Smith was entitled to a judgment solely on the basis that Yellow Freight's claimed reason for discharging Smith was not the "true reason" for his termination. Instead, the Secretary, after rejecting Yellow Freight's proffered reason, continued with the required analysis and found that Smith proved that Yellow Freight intentionally discriminated against him for exercising his own rights under section 405 and in retaliation for assisting other employees to complain of safety-related violations. We agree with the Secretary's treatment of the factual record and conclude that his decision is supported by substantial evidence.

Further, we find no support for Yellow Freight's contention that the Secretary substituted his business judgment for that of Yellow Freight with respect to work rules. The Secretary did not criticize the rule requiring drivers to report delays promptly, much less hold that enforcement of that rule is a *per se* violation of section 405. Rather, the Secretary found that the warning letters' references to delaying freight and equipment exposed the real reason for disciplining Smith. That reason was taking rest stops, not the failure to report those stops. The letters did not mention failure to report or refer to the work rule that required report-

ing. Far from questioning Yellow Freight's business judgment in requiring its drivers to report en route delays, the Secretary merely held Yellow Freight to the language it used in warning Smith.

■ The Secretary also held that even if Yellow Freight discharged Smith both for taking safety breaks and for failing to report them promptly, Yellow Freight had the burden of proving that it would have fired Smith for failing to report even if it could not legally discharge him for taking the breaks. The Supreme Court held in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989), that when a Title VII plaintiff proves that a prohibited consideration such as gender played a "motivating part" in an unfavorable employment decision, the defendant "may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role." (footnote omitted). We have applied this analysis in several recent "mixed motive" cases. See, *e.g., Simpson v. Diversitech General, Inc.*, 945 F.2d 156, 159 (6th Cir. 1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1072, 117 L.Ed.2d 277 (1992); *Terbovitz v. Fiscal Court of Adair County, Ky.*, 825 F.2d 111, 115 (6th Cir.1987). The Supreme Court did not disturb its *Price Waterhouse* treatment of mixed motives cases in *St. Mary's.* We conclude that the Secretary did not commit error in his treatment of the mixed motives issue.

### B.

Yellow Freight relies on our opinion in *Martin* in support of the argument that the Secretary violated its due process rights by deciding that Yellow Freight had violated section 405(a) of the STAA, when Yellow Freight had not received proper notice that Smith was claiming a section 405(a) violation. *Martin* is readily distinguishable from this case. In *Martin* the notice letter from OSHA, which informed the employer that an employee driver had filed a complaint, referred only to section 405(b) issues. Further, the driver's actual complaint referred only to section 405(b), and there were only small fragments of testimony in a large transcript that could be considered related to section 405(a).

■ In the present case, the letter from OSHA stated that the "substance" of Smith's complaint was that he was forced to drive while fatigued (a section 405(b) claim) but it did not refer to his claim of retaliation. Nevertheless, Smith's complaint itself clearly made a section 405(a) claim of retaliation for objecting to the practice of forcing drivers to work while fatigued. Further, in response to Yellow Freight's motion to dismiss, filed nine months before the hearing, Smith filed a memorandum in which he stated that his discharge was "a prima facie violation of section 405(a) STAA." During depositions prior to the hearing Smith stated that he was fired for counseling other drivers concerning federal regulations and exhorting them to stand up for their safety rights. We emphasized in *Martin* that "[t]he fundamental elements of procedural due process are notice and an opportunity to be heard." 954 F.2d at 357. We agree with the Secretary that Yellow Freight had adequate notice of Smith's section 405(a) claim in sufficient time to respond and defend against it. The transcript of the hearing reveals that Yellow Freight was not taken by surprise, was prepared to defend against both section 405(a) and (b) claims, and did in fact do so.

One other comment about *Martin.* By the time that case was ripe for decision, the section 405(b) claim had been dismissed and only the section 405(a) claim remained. Thus, a finding that the employer had failed to receive notice and an opportunity to be heard on the section 405(a) claim required that the entire case be dismissed. In the present case the Secretary found both section 405(a) and (b) violations. In this circumstance, even if the section 405(a) claim had been dismissed under the due process rationale, the STAA required that Smith be reinstated because of the section 405(b) violation.

### C.

■ Yellow Freight's contention that Smith's claim is time-barred has no merit. The triggering act for limitations was Smith's discharge. Smith filed his complaint less

than 180 days after that occurrence. Yellow Freight argues, however, that Smith's claims are based primarily on the August, September and October warning letters, which Smith received more than 180 days prior to filing his complaint. Because Smith did not file complaints upon receiving the warning letters, Yellow Freight avers that Smith could not rely on them to prove an unlawful discharge. Under this theory, the Secretary was barred from examining the legitimacy of the three fatigue incidents and Smith's claims must subsequently fail. See *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 415, 80 S.Ct. 822, 825, 4 L.Ed.2d 832 (1960) (six month statute of limitations under § 10(b) of the NLRA prevents attacking legitimacy of time-barred violations); *NLRB v. McCready and Sons, Inc.*, 482 F.2d 872, 875 (6th Cir. 1973) (same).

The present case is distinguishable from *Local Lodge No. 1424* and cases following it. The Supreme Court noted in *Local Lodge No. 1424* that its decision "has drawn on [the National Labor Relations Act's] purpose and history, and we do not assert the universal applicability of our resolution of the particular question presented for decision." *Id.*, 362 U.S. at 424 n. 15, 80 S.Ct. at 831 n. 15. In the present case the Secretary adopted the ALJ's finding that:

> Unlike the NLRA, which has the overall purpose of securing industrial peace through the balance of competing interests ... the "whistleblower" provisions of the Surface Transportation Assistance Act were enacted specifically to encourage employee reporting of noncompliance with safety regulations and to protect such employees against retaliation for reporting these violations. *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 228 (6th Cir.1987).

Thus the NLRA and STAA have different "purpose[s] and histor[ies]," and there is no reason to believe that the Supreme Court intended the rationale of *Local Lodge No. 1424* to apply here.

More to the point are cases involving similar federal whistleblower statutes. In a whistleblower case arising under the Energy Reorganization Act, the Court of Appeals for the Fourth Circuit determined that the stat-

ute of limitations begins to run only upon receipt of "final and unequivocal notice" of discharge. *English v. Whitfield*, 858 F.2d 957, 961 (4th Cir.1988). Until an employee is notified of termination "there is the possibility that the discriminatory decision itself will be revoked, and the contemplated action not taken, thereby preserving the pre-decision status quo." *Id.* That comment describes the situation in this case. Yellow Freight's argument would require employees to file protective STAA complaints each time they are disciplined, regardless of the nature of the discipline, or risk being discharged 181 days later without recourse. The three letters all advised of more severe discipline if Smith failed to follow company rules; none even hinted that he would be discharged for events that had already occurred.

■ Furthermore, the Secretary did not err by considering the claims of section 405 violations that occurred outside the limitations period. Such evidence may be considered to "shed light on the true character of the matters occurring within the limitations period." *NLRB v. Oberle–Jordre Co.*, 777 F.2d 1119, 1120 (6th Cir.1985) (quoting *Local Lodge No. 1424*, 362 U.S. at 416, 80 S.Ct. at 826). The Secretary necessarily had to examine Yellow Freight's disciplinary actions against Smith to determine the cause of his discharge. Furthermore, Yellow Freight itself has attempted to justify Smith's discharge by pointing to various disciplinary actions it took against Smith prior to the 180 day limitations period.

## CONCLUSION

This case is similar in many details to *Yellow Freight Systems v. Reich*, 8 F.3d 980 (4th Cir.1993). Like the court in that case, we conclude that the Secretary's decision here is supported by substantial evidence and that the Secretary committed no errors of law.

The petition for review and denial of enforcement is denied, and the Secretary's decision is **AFFIRMED.**