NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0245n.06

No. 08-4441

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Apr 20, 2010**
LEONARD GREEN, Clerk

RONALD JOE MELTON,                      )
                                        )
        Petitioner,                     )
                                        )
v.                                      )  ON PETITION FOR REVIEW OF
                                        )  A FINAL ORDER OF THE UNITED
UNITED STATES DEPARTMENT OF             )  STATES DEPARTMENT OF LABOR
LABOR,                                  )  ADMINISTRATIVE REVIEW BOARD
                                        )
        Respondent,                     )
                                        )
        and                             )
                                        )
YELLOW TRANSPORTATION, INC.,            )
                                        )
        Intervenor.                     )

Before: DAUGHTREY, GILMAN, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** Petitioner Ronald Melton, an over-the-road truck driver, brought this action against his employer, defendant Yellow Transportation, Inc., alleging a violation of the anti-retaliation provision of the Surface Transportation Assistance Act (the Transportation Act), 49 U.S.C. § 31105(a). An administrative law judge and the Administrative Review Board denied relief, and Melton seeks review in this court, arguing both that a warning letter issued by his employer for absenteeism constituted an adverse employment action under the Transportation Act and that Yellow Transportation's belief

that Melton was not impaired due to fatigue was an insufficient basis for the issuance of the warning letter.

The administrative law judge found that Melton was not guilty of using fatigue as a subterfuge to avoid work but, nevertheless, held that the warning letter did not constitute discipline under the Transportation Act because it was based on the employer's good-faith mistake of fact. The Administrative Review Board affirmed, holding that the letter was not a materially adverse action under the Act because it "did not affect [Melton's] pay, terms, or privileges of employment, did not lead to discipline, and was removed from his personnel file without consequences." For the reasons set out below, we conclude that the Board's decision is supported by substantial evidence and must, therefore, be upheld.

## FACTUAL AND PROCEDURAL BACKGROUND

At the administrative level, the parties stipulated that in May 2004, Melton was working from the Yellow Freight depot in Nashville, Tennessee, a division of Yellow Transportation. His "usual bid dispatch" was a trip from there to Jackson, Mississippi, with a scheduled starting time of 6:00 a.m. on Wednesdays, Fridays, and Sundays and a scheduled running time of nine hours for completion of the trip. On May 20, 2004, he began a ten-day vacation, scheduling his return to over-the-road driving for 6:00 a.m. on Sunday, May 30, 2004. In preparation for the resumption of his driving responsibilities, Melton actually returned home from vacation on May 27 in order to re-establish the sleep pattern necessary for the job. Melton testified that he went to bed between 6:30 p.m. and

7:00 p.m. on Thursday, May 27, Friday, May 28, and Saturday, May 29, so that he could have sufficient sleep before getting up at 4:00 a.m. on Sunday, May 30, to prepare for a 6:00 a.m. departure from Nashville. But at 3:53 a.m. on Sunday morning, Melton was awakened by a telephone call from the dispatcher at Yellow Freight, who informed him that the 6:00 a.m. departure would be delayed because the load was not yet ready. Having had approximately nine hours of sleep already and unable to get back to sleep, Melton got out of bed at approximately 4:00 a.m., "made coffee[ ] and turned the [television] on," waiting for a second call indicating that he should report to the freight depot.

When Melton still had not heard back from the Yellow Freight dispatcher by noon, he called in to check on the status of his load. At that time, Melton was told that there was "nothing working on the dock or nothing coming inbound." Because drivers are allowed two hours to report to work after notification that their load is ready for delivery, Melton calculated that, under the best of circumstances, *i.e.*, if his load been available at the time he had called just after noon, he still could not have departed Nashville until 2:15 p.m., and would not have arrived in Jackson until at least 11:15 p.m., after having been awake for more than 19 consecutive hours. As it was, Melton said, he had no idea when he would actually be able to depart for Mississippi, so he told the dispatcher, "I'm going to become too tired, too fatigued to be safe to take this run, so drop me to my next bid," which would have been the following Wednesday.

Approximately ten days later, on June 10, 2004, Jeff Bacon, an operations manager

at Yellow Freight, sent Melton a letter of warning that read:

> On May 20, 2004 you arrived Nashville, Tennessee at 1154 hours. You marked to return to your 0600 hours bid on May 30, 2004 due to "vacation." On May 30, 2004 you were delayed at 0353 hours. You called in at 1212 hours on May 30, 2004 claiming fatigue. You claimed fatigue after being home for 240 hours.
>
> This is a letter of warning for using fatigue as a subterfuge to avoid work (absenteeism). Any further occurrences of this nature will subject you to more severe disciplinary action. This action is taken in accordance with Article 45 of the National Master Freight Agreement and Southern Region Area Over-the-Road Supplemental Agreement.

According to Bacon, it "was a suspicious pretense, coming back off of ten days vacation,

and then marking off fatigued on his first run [after] that vacation." Moreover, Bacon

testified that Melton's Sunday morning run was more often delayed than not. In 2004, he

said, the Nashville-Jackson trip had been delayed 75 percent of the time, sometimes as

late as 2:00 p.m., and yet Melton had not claimed fatigue on other occasions. When

Melton offered no further explanation for his absence during the week following his refusal

to make the Jackson run, Bacon decided that a warning letter was justified.

Melton testified that he received the letter by certified mail on June 12, 2004. Four

days later, he filled out a complaint form supplied by his union representative that stated:

> I, R.J. Melton, am protesting this letter of warning which I received on June 12, 04. As the law states under Federal Motor Carrier Safety Regulation 392.3, "No driver shall operate a motor vehicle nor can a motor carrier

- 4 -

> require or permit a driver to operate a motor vehicle, while the driver's ability or alertness is so impaired.
>
> This letter of warning is totally against this safety regulation. It is unfair to expect drivers at Yellow Freight to refrain from getting ill over a weekend period. Sickness is something totally out of a person's control.

Under the terms of the collective bargaining agreement that controlled the disciplinary process at Yellow Freight, a warning of the kind contained in the letter was a precondition to any actual discipline, but under the collective bargaining agreement between the Teamsters and Yellow Freight, such a warning could not be the subject of a formal grievance procedure on behalf of the union member. As a result, Melton's union representative negotiated informally with Yellow Freight to have the letter removed from Melton's file, but was unsuccessful.[1]

In late December 2004, the warning letter was removed from the petitioner's personnel file in accordance with a provision of the collective bargaining agreement that "[a] warning notice . . . shall not remain in effect for a period of more than six (6) months from the date of said warning notice." In the meantime, Melton filed an administrative complaint under the Transportation Act that was, eventually, the subject of a two-day hearing before an administrative law judge. At the conclusion of the hearing, the administrative law judge determined that Melton had engaged in protected activity under

---

[1]The company balked at removing the warning letter because the reason Melton gave for his absence on May 20 was fatigue, but the grievance form later supplied by the union representative indicated that Melton was relying on illness as an excuse. Melton conceded that the "grievance form" submitted to Yellow Freight inaccurately asserted retaliation for a claim of illness rather than fatigue. He testified, however, that he had merely signed a preprinted form provided by the union that was used as the basis for a possible settlement.

the Transportation Act when he chose not to drive in anticipation of fatigue. Even so, the judge also concluded that Yellow Freight's issuance of the warning letter was based upon the reasonable belief that Melton had *not* engaged in protected activity but, rather, was seeking merely to prolong his period of vacation. Finally, the administrative law judge ruled that the petitioner had suffered no adverse employment action as a result of the warning letter because the letter did not affect Melton's "hours, work assignments, pay, opportunities for advancement, or retirement benefits [and, thus, t]he letter had no immediate impact on any term or condition of his employment."

Melton appealed that decision to the Administrative Review Board. The Board unanimously affirmed the administrative law judge's determinations, holding that the petitioner had indeed engaged in protected activity, that the company's letter of warning did not constitute discipline or discrimination under the Transportation Act, and that Melton failed to establish "that his putative protected activity was the reason for the warning letter." Two of the three Board members wrote separately to incorporate the Supreme Court's then-recent decision in *Burlington Northern & Santa Fe Railway Co. v. White*, in which the Court held in a Title VII retaliation case that a plaintiff must establish that the employer's allegedly retaliatory action was "materially adverse," that is, that the action "could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 57 (2006). The third member of the Board agreed that the warning letter was not actionable under the Transportation Act, but he declined to join his colleagues in abandoning the "tangible employment consequence" test that had been applied to

retaliation cases brought under the Transportation Act up to that time. He further observed that the result would be the same under either test.

Melton appeals the Board's decision, pointing to a co-worker's affidavit suggesting that some warning letters of the kind Melton received remained in Yellow Freight's personnel files indefinitely and could be taken into account in some limited circumstances[2] even beyond the six-month limit provided in the collective bargaining agreement. This evidence, he argues, proves that a warning letter could later "dissuade a reasonable worker from making or supporting a charge of discrimination" for fear of receiving a second letter that would then result in termination.

## DISCUSSION

In passing the Transportation Act, Congress "recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against retaliation for reporting these violations." *Yellow Freight Sys., Inc. v. Reich*, 27 F.3d 1133, 1138 (6th Cir. 1994) (citations omitted). As a result, Congress enacted section 405 of the Surface Transportation Assistance Act, 49 U.S.C. § 31105, to protect "employees in the commercial motor transportation industry from being discharged

---

[2]The record indicates that the existence of a stale warning letter might be relevant in a later disciplinary hearing to impeach a statement by an employee that he had never had any prior trouble on the job.

in retaliation for refusing to operate a motor vehicle that does not comply with applicable

state and federal safety regulations or for filing complaints alleging such noncompliance."

*Brock v. Roadway Express, Inc.*, 481 U.S. 252, 255 (1987).

Section 31105(a)(1)(B) provides:

> A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment because the employee refuses to operate a vehicle because (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety or health; or (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's unsafe condition.

Throughout this litigation, Melton has asserted that Yellow Freight violated this proscription

by disciplining him, *i.e.*, by issuing a warning letter, when he had done nothing more than

comply with safety regulations that prohibit the operation of a commercial motor vehicle

while fatigued.

In order to make out a *prima facie* case of a violation of section 31105(a)(1)(B), the

petitioner must first demonstrate "(1) that [he] engaged in a protected activity; (2) that the

defendant had knowledge of [his] protected conduct; (3) that the defendant took an

adverse employment action towards [him]; and (4) that there was a causal connection

between the protected activity and the adverse employment action." *Mickey v. Zeidler Tool

and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (citations omitted).  "The burden of

establishing a *prima facie* case in a retaliation action is not onerous, but one easily met."

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citation omitted).

> If the employee successfully establishes such a *prima facie* case,

> the court makes its determination of liability by adapting the familiar Title VII *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792 (1973),] burden-shifting rules to the [Transportation Act]. At this point, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant is successful in rebutting the inference of retaliation, the plaintiff bears the ultimate burden of demonstrating by a preponderance of the evidence that the legitimate reasons were a pretext for discrimination."

*Yellow Freight Sys., Inc. v. Reich*, 27 F.3d at 1138 (citation omitted).

We review the Board's decision under the substantial-evidence standard. Thus, we must uphold the administrative determination as long as it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and as long as the Board's legal conclusions are neither "arbitrary, capricious, involve an abuse of discretion, [n]or otherwise are not in accordance with law." *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992).

On appeal, Yellow Transportation makes no more than a technical challenge to the administrative finding that Melton engaged in protected activity when he declined to make the May 30 run to Jackson, Mississippi. Furthermore, there is no dispute that Melton also

established the second prong of his *prima facie* case by adducing uncontroverted evidence that the company was aware that the petitioner had called in claiming to be too fatigued to operate his truck safely. Instead, the crux of the dispute in this case concerns the third prong, *i.e.*, whether the issuance of the warning was sufficiently adverse to be actionable under the Transportation Act. In this regard, Melton points to the language in the letter threatening "more severe disciplinary action" in the event of a further claim of fatigue that is judged to be a subterfuge for unexcused absenteeism. The Department of Labor and Yellow Transportation dispute the petitioner's contention that issuance of the warning constituted an adverse action under applicable law, describing it as merely a pre-condition to discipline under the collective bargaining agreement and as essentially moot once the letter itself was removed from Melton's file.

In addition, the parties disagree about what standard we should apply to resolve the dispositive question now before us: how serious must the retaliation be in order to become actionable under the Transportation Act? Both the Department of Labor and Melton urge us to uphold the decision of a majority of the Board adopting and applying the holding of *Burlington Northern* to proof of retaliation under the Transportation Act. As intervenor here, Yellow Transportation disagrees, arguing that *Burlington Northern* cannot provide the appropriate standard in a Transportation Act case because the Transportation Act, unlike Title VII, prohibits retribution against employees only to the extent that the retaliation takes the form of discharge from employment or other discipline or discrimination "regarding pay, terms, or privileges of employment." 49 U.S.C. § 31105(a)(1).

As it turns out, however, the question need not be addressed in this case because, regardless of which standard is applied, the result is the same, as demonstrated by the fact that both the majority and minority opinions from the Board resolve the issue in favor of the employer. Applying *Burlington Northern*'s test, two members of the Board concluded that in order to establish a *prima facie* case of retaliation, Melton would have to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citations and internal quotation marks omitted). The two-member majority noted, first, that the warning functioned merely as a pre-condition to discipline set out in and controlled by the terms of the collective bargaining agreement; second, that the warning could not be considered "materially adverse" because the recipient experienced no change in pay, benefits, or working conditions; and, third, that the warning letter would not deter a reasonable employee from later exercising his or her rights under the Act, especially since the effect of the original warning would expire six months after its issuance. The remaining member of the Board, although resistant to importing Title VII analysis into the agency's interpretation of the Transportation Act, noted that courts applying the *Burlington Northern* standard under Title VII and other protective legislation such as the Family and Medical Leave Act, U.S.C. §§ 2601-2654, have uniformly held that issuance of a warning letter without tangible employment consequences does not constitute discipline or discrimination under those statutes. Moreover, this third member of the Board agreed that Melton had

- 11 -

"failed to prove that he suffered an adverse action, a requisite element of his case" and, for that reason, that "his entire claim must fail."

The Board's ruling in the employer's favor was clearly supported by substantial evidence, as the administrative law judge found and as the Board also concluded. In addition, a letter in the record indicates that the union – another player in the drama, although not a party to the lawsuit – did not consider the warning to constitute discipline under the collective bargaining agreement and, therefore, would not file a grievance on Melton's behalf until some form of actual discipline was imposed by Yellow Freight. If, for example, Melton had been fired on the basis of a second warning issued within six months after the first, at that point both warning letters would have been subject to challenge as the basis for his termination. To us, it seems counter-intuitive to view a warning letter that was not considered sufficiently "adverse" to warrant invocation of a union's grievance procedure under a collective bargaining agreement as nevertheless actionable under the Transportation Act. We cannot say that the Board erred in reaching the same conclusion.

## CONCLUSION

We conclude that the Board's decision in favor of Yellow Transportation should be upheld because substantial evidence supports the determination that the warning letter Melton received had no effect on his conditions of his employment and, therefore, was not "discipline" and not actionable as retaliation under the Transportation Act. Given that conclusion, we pretermit discussion of two other issues raised by the employer, *i.e.*, whether

Melton's supervisor acted in good faith in sending the letter and whether the complaint became moot once the letter was removed from Melton's personnel file. Both of those questions involved disputes of fact that need not be resolved here.

Review is DENIED.