RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0091P (6th Cir.)
File Name: 01a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JERRY GRIBCHECK,
   *Plaintiff-Appellant,*

  *v.*

MARVIN T. RUNYON, JR.,
Postmaster General, United
States Postal Service,
   *Defendant-Appellee.*

No. 00-3279

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-02547—Lesley Brooks Wells, District Judge.

Argued: March 6, 2001

Decided and Filed: March 30, 2001

Before: MARTIN, Chief Judge; BATCHELDER and
MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael T. Conway, MICHAEL TERRENCE
CONWAY COMPANY, Brunswick, Ohio, for Appellant.
Annette G. Butler, ASSISTANT UNITED STATES
ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:**

Michael T. Conway, MICHAEL TERRENCE CONWAY COMPANY, Brunswick, Ohio, for Appellant.  Annette G. Butler, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Judge.  Jerry Gribcheck appeals the district court's grant of summary judgment to the U.S. Postal Service on his retaliation claim filed under the Rehabilitation Act, 29 U.S.C. § 794.  For the following reasons, we AFFIRM.

I.

Gribcheck has worked as an electronics technician for the U.S. Postal Service since March 1984. On February 12, 1997, in the process of repairing a machine, Gribcheck moved a portable conveyor table out of its usual position.  Another postal employee, Tracy Williams, had been instructed to use the machine, which she did not know was broken, and she moved the conveyor table back to its usual position. According to a statement written by Williams soon after the incident, Gribcheck began "yelling and cursing" and "was grabbing the portable conveyor table, swinging it back around with force, causing me to jump out of the way."  The supervisor who had told Williams to use the machine in question, Jean Gist, approached the scene and stated that she "observed . . . Gribcheck swinging the portable conveyor belt and yelling 'the machine is broke.'"  Gist stated that when she told Gribcheck that he was behaving inappropriately, "[h]e just kept yelling 'the machine is broke' and waving his arms in the air, refusing to acknowledge me."  Gist then reported the incident to other supervisors, including Maintenance Supervisor Sam Brucchieri.

Because Gribcheck and Williams gave differing versions of the event, no disciplinary action was immediately taken

against Gribcheck. On the following Monday, however, three supervisors – Charles Kirkman, Robert Czech, and Brucchieri – determined that Gribcheck should be fired, and on March 26, they issued him a Notice of Proposed Removal. Gribcheck filed a grievance with the American Postal Workers Union AFL-CIO, and his termination was reduced to a fourteen-day suspension. The suspension was upheld in arbitration.

On October 2, Gribcheck sued under the Rehabilitation Act, 29 U.S.C. § 794, seeking compensation for the suspension, which he alleges was in retaliation for a 1995 Rehabilitation Act lawsuit he filed against the Postal Service, which was ongoing at the time of the incident with Williams.[1] The supervisors contend that the suspension was based on the incident with Williams as well as Gribcheck's history of violence in the workplace.

On December 3, 1998, the Postal Service filed a motion for summary judgment, which the district court granted on January 28, 2000. Gribcheck appeals that decision.

## II.

We review de novo a district court's grant of summary judgment. *See Junger v. Daley*, 209 F.3d 481, 484 (6th Cir. 2000). Summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion" for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

[1] In that suit, Gribcheck alleged that he was disabled because of a bipolar disorder and that the Postal Service did not adequately protect him from hostile and prejudiced co-workers. The district court granted summary judgment to the Postal Service. We affirmed in an unpublished decision. *See Gribcheck v. United States Postal Service*, 181 F.3d 101 (6th Cir. 1999).

While we have never explicitly stated our framework for reviewing retaliation claims under the Rehabilitation Act, our prior analysis of both retaliatory claims and Rehabilitation Act claims points us to the familiar *McDonnell Douglas* framework used by other circuits in such cases. *See Sherman v. Runyon*, 235 F.3d 406 (8th Cir. 2000) (applying *McDonnell Douglas* test to retaliation claim under the Rehabilitation Act); *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987) (applying *McDonnell Douglas* to Title VII retaliation claim). *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), establish a three-step burden-shifting framework for analyzing claims of employment discrimination. First, a plaintiff must set forth a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *See Burdine*, 450 U.S. at 253. The ultimate burden of persuasion remains at all times with the plaintiff. *See id.*

A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected. *See Wrenn*, 808 at 500. In the present case, Gribcheck set forth his prima facie case as follows: 1) his earlier discrimination claim under the Rehabilitation Act was a protected activity; 2) the supervisors who suspended him were aware of his claim; 3) he was then suspended for fourteen days; and 4) the events were causally connected because the suspension occurred while his Rehabilitation Act suit was pending and because the supervisors who suspended him did not witness the encounter with Williams and therefore had no basis for the suspension.

herself. However, Gist's asking Williams what had happened is not inconsistent with Gist's having seen the event for herself. Furthermore, Williams's deposition testimony cited by Gribcheck does not in any way demonstrate that Gist ever changed her story.

Gribcheck's other arguments likewise fail. Gribcheck asserts that "Brucchieri is a bald faced liar," and questions the credibility of Kirkman. This is not the sort of "evidence" contemplated by the third step of *McDonnell Douglas*. *See Irvin*, 837 F.2d at 726. Gribcheck also states that a fellow Postal Service employee testified in a deposition that pushing the table at issue is impossible without dropping to one's knees and shoving it. Unfortunately, Gribcheck did not include this deposition in his filings on appeal, nor did he include the section from Williams's deposition where she allegedly stated that she "could not see clearly behind a machine that blocked her view of Plaintiff."

Even taking all of Gribcheck's assertions in the light most favorable to him, he still cannot show that a reasonable jury could find by a preponderance of the evidence that the Postal Service's stated reasons for his suspension are pretextual. The burden of proof lies with Gribcheck, and he has failed to meet its requirements.

III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the U.S. Postal Service.

*Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). A "blanket denial [of] the employer's articulated reasons . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Id.*

Gribcheck attempts to refute the Postal Service's stated reasons by struggling to point out inconsistencies in the various statements given by Postal Service employees. For example, Gribcheck argues:

> Williams says she was approached from behind by . . . Gribcheck and was startled by his loud protesting to her . . . while she was placing mail in a conveyor table . . . . Williams said that Gribcheck swung a conveyor table in front of her making her jump out of the way in the same incident. Yet this scenario is a physical impossibility. Appellant could not have been in front of and behind Williams at the same time.

This is not evidence, nor does it even cast doubt on Williams's story, as had she simply turned around after she heard Gribcheck, he would have then been in front of her. Similarly, Gribcheck argues:

> Williams testified that Supervisor . . . Gist *asked her what happened* after the incident . . . occurred, *changed her story* to say she saw the incident, but also admitted that she was 'behind the machine' where Williams and Plaintiff were allegedly having a confrontation . . . and that Williams 'was in front of the machine.' Accordingly, Supervisor Gist did not see the Plaintiff assault or threaten or act hostile towards Williams as she claimed in her declarations because that too was a physical impossibility as further evidenced by the fact that she had to ask Williams for information about 'what happened.'

Gribcheck seems to argue that because Gist asked Williams what had happened, she could not have seen the incident for

Although the district court concluded that Gribcheck did not establish a prima facie case of discrimination, we conclude that he did clear this low hurdle. *See Wrenn*, 808 F.2d at 500 (citing *Burdine*, 450 U.S. at 253). Gribcheck easily establishes the first and third elements in that he filed a discrimination claim, which is a protected activity, and later was suspended for fourteen days. As for the second element, although the supervisors denied knowing about Gribcheck's prior suit, Gribcheck asserts that he deposed Brucchieri and Kirkman in his earlier discrimination action. Taking the underlying facts in the light most favorable to Gribcheck, the supervisors most likely knew of his protected activity.

The district court determined that Gribcheck failed to establish the fourth element of his prima facie case, the causal connection between the protected activity and the adverse employment action. The district court concluded:

> Ms. Williams had not met Mr. Gribcheck prior to the incident, and she was not ordered to make a statement about the event. She thus had no motive to lie or to fabricate a tale. Although Mr. Gribcheck's supervisors did not witness the incident, Ms. Williams's supervisor did, and she corroborates Ms. Williams's version. Both women agree Mr. Gribcheck was shouting "the machine is broke," pushed a table toward Ms. Williams, and remained agitated even after the supervisor arrived. Finally, the mere fact that Mr. Gribcheck was suspended during the course of the underlying litigation does not show a causal link between it and the suspension. The suspension occurred while his discrimination case was pending, but so did his violent actions toward a fellow employee.

While the testimony of Williams and her supervisor do support one another and Gribcheck did act violently, the district court jumped ahead in the *McDonnell Douglas* framework by giving weight to these factors at this point in its analysis. The factors cited by the district court do not go to the question of causal connection; they go to the defendant's

"legitimate, nondiscriminatory reason" for suspending Gribcheck. Furthermore, the district court should not have determined Williams's credibility on summary judgment. *See Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment; rather, the evidence should be viewed in the light most favorable to the non-moving party."). A plaintiff may demonstrate the causal connection by the proximity of the adverse employment action to the protected activity. *See Wrenn*, 808 F.2d at 501. Gribcheck showed that his litigation was ongoing at the time of his suspension, thereby establishing the fourth prong of his prima facie case.

Because Gribcheck established a prima facie case of retaliation, the burden shifts to the U.S. Postal Service "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. The Postal Service claims it suspended Gribcheck because of his actions in the incident involving Williams. In its Notice of Proposed Removal, the Postal Service charged Gribcheck with four violations of Postal Service policy: "1) conduct unbecoming a postal employee, 2) disrespect and discourtesy to another postal employee, 3) failure to observe safety rules and regulations, and 4) unsafe act." The Notice of Proposed Removal elaborated on the reasons for Gribcheck's discipline:

> [Y]ou caused a disruption on the workroom floor by yelling and using profane language in comments directed at Ms. Williams. You were also observed . . . swinging the portable conveyor table around in a careless and unsafe manner and endangering the safety of others in your area. . . . [O]n the workroom floor on the day in question, there was no yellow barrier tape roping off [the machine to be repaired]. You are aware, as are all of our Electronic Technicians, that you must use the yellow barrier tape to rope off a machine when it is being repaired. . . . Had you used the yellow barrier tape, this incident could have been avoided. In addition, you are

> aware that carelessly swinging around a large piece of equipment, like the portable conveyor table is very dangerous and could cause injury to yourself and others. You failed in these most basic responsibilities of your position.

The Notice also cited language from Postal Service policies supporting Gribcheck's removal. For example, the Cleveland Performance Cluster Violence in the Workplace Policy provides for "zero tolerance" of violence in the workplace, including vulgar language. Also, the Employee and Labor Relations Manual states that "[e]mployees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service," and that "all employees must be convinced that they are responsible for working safely." The Postal Service also considered Gribcheck's past record in that on April 11, 1995, he received a fourteen-day suspension for "conduct unbecoming a postal employee/threatening a postal employee/failure to keep mentally and physically fit for duty." The U.S. Postal Service met its burden by articulating these legitimate, nondiscriminatory reasons.

After the defendant articulates its nondiscriminatory reasons for taking the employment action against the plaintiff, the presumption of discrimination created by the prima facie case drops out of the analysis. *See Wrenn*, 808 F.2d at 501. "Even though the burden of going forward with evidence to answer [the] prima facie case . . . moved to the [defendant], the ultimate burden of persuasion never shifted from the plaintiff." *Id.* Therefore, the plaintiff must answer the defendant's nondiscriminatory reasons by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual. *See id.* Gribcheck fails this last step of the *McDonnell Douglas* framework. He does not present any evidence to refute the Postal Service's stated reasons for his suspension; he merely denies their allegations. "Disputation of the facts underlying [the defendant's] legitimate business reason . . . is not sufficient to carry [the plaintiff's] burden." *Irvin v. Airco*