**Linda L. KETTERING, Plaintiff–Appellant,**

v.

**DIAMOND–TRIUMPH AUTO GLASS, INC.; Susan Parris Defendants–Appellees.**

No. 00–3916.

United States Court of Appeals, Sixth Circuit.

Nov. 16, 2001.

Before MARTIN, Chief Judge; CLAY, Circuit Judge; and GARWOOD, Circuit Judge.*

## I.

PER CURIAM.

Linda L. Kettering appeals the district court's grant of summary judgment to Diamond–Triumph Auto Glass on her Title VII hostile environment and retaliation claims, and to Susan Parris on her defamation claim. We AFFIRM the decision of the district court.

## II.

Kettering was hired as a sales representative for Diamond, a supplier and installer of automobile glass, on November 4, 1996. She was initially hired to represent Diamond's Akron, Ohio store, but shortly after her hire, she was also assigned Diamond's Mansfield, Ohio store. As a sales representative, Kettering's principal responsibilities were to cultivate new accounts and increase sales in the Akron and Mansfield territories.

Kettering's supervisor was Gina Bennington, a Diamond sales manager based in Scranton, Pennsylvania. Bennington, in turn, reported to Keith Omaits, Diamond's District Manager for the Northern District of Ohio and the individual who hired Kettering. Included in Omaits's district were the Akron and Mansfield stores. The employees at the Akron store were Keith Newbauer, the branch manager; Mike Benbow, a customer service representative; and two glass installers. Newbauer was described as a difficult person to work with, and as uncivil and demeaning to both co-workers and customers. Although Newbauer was the branch manager of the Akron store, he did not have supervisory authority over Kettering.

The first incident of sexual harassment occurred on April 25, 1997 when Newbauer "fondled [Kettering's] right leg and said how nice her leg felt." In response, Kettering told Newbauer to stop. When she later bent over to pick something up, Newbauer said, "Oh and while you're down there ...," to which Kettering responded, "I don't believe you," and walked away. Kettering immediately reported this incident to Bennington.

Kettering alleges that after this incident, Newbauer began a campaign of harassment against her. For example, after Kettering told Newbauer that she made twenty-six sales calls one day, Newbauer replied sarcastically, "Is that all?" On another occasion, Newbauer told Kettering to call on the Allstate Insurance Office, and when Kettering questioned this request because Allstate already used another network of glass installers, he replied "Bull-fucking shit" and said "If he wants you to call on him, you better fuck-

---

* The Honorable William L. Garwood, United States Circuit Judge for the Fifth Circuit, sit-  ting by designation.

ing call on him." Kettering also alleges that in May, Newbauer threw a tantrum when she told him Omaits directed her to run the Akron shop the following day because an installer would be off and Newbauer would have to fill in. Newbauer ranted that he wanted someone from Cleveland to come in "who knows what he's doing." On another occasion, Newbauer repeatedly interrupted Kettering when she was on the phone with a customer. When she asked him to let her finish her conversation with the customer, Newbauer replied loud enough for the customer to hear, "This is fucking important." On May 9, Kettering allegedly received a call from Omaits in which he stated:

> Everything is negative on your part, not Keith Newbauer's. Our figures the past two months in Akron have been the highest ever. You are more disrespectful to Newbauer than he is to you. Ohio is the best store in most of the nation now and you seem to be the crux of the problem. I will not allow negativism to pull this store down.

Omaits also told her that she had "absolutely no grounds for a sexual harassment charge and that [she] made Newbauer very uncomfortable." After this conversation, says Kettering, "Newbauer apparently got the message as he did not directly harass [her]; however, he did it surreptitiously and behind [her] back."

The second incident of sexual harassment occurred on September 19, when Kettering, Newbauer and Benbow were in Diamond's Akron store discussing the importance of good customer relations. Kettering stated that she believed it was important to follow up with customers after a sale, and thank them for their business. Newbauer allegedly replied, "I'll bet you care take care of them . . . ." and motioned with his hand and mouth simulating oral sex. Kettering told Newbauer that he "re-

ally crossed the line" and that she was insulted.

Kettering reported this second incident to Bennington on October 6. Bennington relayed this information to Diamond's owner and told Kettering that the incident would be handled "according to company policy." In an affidavit, Omaits stated that he investigated this incident—which Newbauer denied—and admonished Newbauer to refrain from making inappropriate remarks to Kettering or anyone else. He filed a written employee disciplinary report in Newbauer's personnel file on October 9.

On February 3, 1998, a meeting was held in the Akron store with Kettering, Benbow, Newbauer, Bennington and Omaits. Newbauer criticized Kettering for lagging sales in the Akron territory and for improperly listing new accounts on her weekly report sheets.

Omaits sent Susan Parris, Diamond's Cleveland sales representative, with Kettering on June 10 and 11. Kettering contends that Omaits sent Parris "to be [his] eyes and ears" and to unofficially critique her performance. Parris reported to Omaits that Kettering refused to call on certain businesses and spoke highly of her previous employer, a competitor of Diamond, at some of the accounts.

On June 13, Omaits came to the Akron store and fired Kettering. According to Kettering, Omaits told her that she was being fired because she had not increased sales in the Akron and Mansfield areas and because of her sales technique. He added that if he did not let her go, he would have to lay off an installer. Omaits also told Kettering that "You scared the hell out of us with your sexual harassment threats . . . ."

Kettering filed an administrative charge of sexual harassment and retaliation with

the Equal Employment Opportunity Commission on November 13, 1998. In the course of its investigation, the Commission requested information from Diamond, and in response, Diamond asked Parris to prepare a written statement summarizing her observations of Kettering's work. Parris reported that Kettering refused to call on certain businesses, that Kettering spoke highly of her previous employer at some of the accounts and made lewd comments and gestures in her presence. Diamond forwarded this letter to the Commission.

On June 11, 1999, Kettering filed the instant lawsuit alleging federal and state hostile environment sexual harassment and retaliation claims against Diamond, and a defamation claim against Parris. On June 25, 2000, the district court granted defendants summary judgment.

### III.

We review the district court's grant of summary judgment *de novo*. *See Gribcheck v. Runyon*, 245 F.3d 547, 549 (6th Cir.2001). Summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### A. Kettering's Hostile Environment Claim Against Diamond

■ In a "deferral state" such as Ohio, Title VII requires a plaintiff to file an administrative charge of discrimination with the Commission within three hundred days of the alleged harassment. *See* 42 U.S.C. § 2000e–5(e) (1994). Taking the underlying facts in the light most favorable to Kettering, she was harassed on two occasions—the first on April 25, 1997, and

the second on September 19, 1997.[1] Kettering did not file an administrative charge with the Commission until November 13, 1998—more than three hundred days after the most recent incident of sexual harassment. Thus, unless Kettering can avail herself of an exception to Title VII's filing requirements, her claim was not timely filed with the Commission.

■ One such exception is the "continuing violation" doctrine, which provides that when "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir.2000) (quoting *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir.1992)). Kettering cannot avail herself of this exception because neither incident of harassment occurred within the limitations period. Kettering cannot rely on her additional allegations of harassment because those alleged incidents were not "sexual" in nature or directed to Kettering because of her gender; rather, they were a function of Newbauer's uniformly rude and uncivil personality. As Kettering acknowledges "he [Newbauer] treated everybody pretty much the same." Therefore, Kettering cannot rely on the "continuing violation" doctrine, and her hostile environment claim is time barred.

### B. Kettering's Retaliation Claim Against Diamond

■ Kettering's claim that Diamond retaliated against her for her complaints about Newbauer's harassment is governed by the familiar *McDonnell Douglas* framework. *See Gribcheck*, 245 F.3d at 550. In order to establish a prima facie case of

---

1. On appeal, Kettering alleges a third incident of harassment, but because it was not raised below, we do not consider it here. *See United* *States v. Markwood*, 48 F.3d 969, 974 (6th Cir.1995).

retaliation, Kettering must show that: (1) she engaged in protected activity; (2) the defendant knew of this exercise of her protected rights; (3) defendant took an employment action adverse to her; and (4) a causal connection between the protected activity and the adverse employment action. *See id.* To establish the necessary causal connection, plaintiff must proffer sufficient evidence "to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990) (citation omitted).

Once a plaintiff establishes a prima facie claim of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. *See Gribcheck*, 245 F.3d at 550. If the defense meets this burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely a pretext for retaliation. *See id.* To demonstrate pretext, a plaintiff is required to show by a preponderance of the evidence that the proffered reason either had no basis in fact, did not actually motivate the discharge, or was insufficient to motivate discharge. *See id.*

■ As the district court found, Kettering can establish a prima facie case of retaliation. Kettering notified Diamond of the harassment, therefore it knew about the exercise of her protected rights; and Diamond ultimately took adverse action against her because it terminated her employment. Kettering can also establish the requisite causal connection because when she was fired, Omaits, a Diamond district manager, told her that she "scared the hell out of us with [her] sexual harassment threats."

■ Diamond has also satisfied its burden by presenting sufficient evidence of a legitimate, non-discriminatory reason for Kettering's discharge. Kettering was hired to increase sales in the Akron and Mansfield territories, but according to Omaits, Kettering did not, in fact, increase sales in these territories. Moreover, Omaits also believed that Kettering was unwilling to call on her certain businesses and was apparently promoting the interests of her former employer, a competitor of Diamond.

Although Omaits's statement makes this a relatively close case, Kettering is ultimately unable to establish that Diamond's proffered justification for her discharge was pretextual. In an effort to carry her burden, Kettering focuses on sales records for March and April 1998, which indicate that the Akron and Mansfield stores were profitable. As the district court found, however, this evidence is inconclusive and is insufficient to meet the preponderance of evidence standard. Not only do these records fail to address Kettering's contribution, they also only cover a limited time period of Kettering's employment. Her reference to the August 1998 sales records also does not support her claim because they reflect sales after her termination. Kettering's other arguments represent, at best, "disputation of the facts underlying [the defendant's] legitimate business reason," which this Court has recognized is "not sufficient to carry [the plaintiff's burden]." *Gribcheck*, 245 F.3d at 552 (quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir.1987)).

C. Kettering's Defamation Claim Against Parris

■ Kettering's defamation claim revolves around Parris's written statement summarizing her observations of Kettering's job performance and demeanor. To prove a defamation claim under Ohio law, a claimant must show—(1) a false statement; (2) the statement is defamatory to the plaintiff; (3) the statement was pub-

lished to a third party; (4) the publishing defendant was, at a minimum, negligent; (5) the statement damaged plaintiff's reputation. *See Parry v. Mohawk Motors,* 236 F.3d 299, 312 (6th Cir.2000) (citing *Lansdowne v. Beacon Journal Publishing Co.,* 32 Ohio St.3d 176, 512 N.E.2d 979, 984 (Ohio 1987)). Privilege, absolute or qualified, is a defense to defamation. *See Parry,* 236 F.3d at 313. Under Ohio law, statements made to the Equal Employment Opportunity Commission are absolutely privileged. *See Saini v. Cleveland Pneumatic Co.,* No. 51993, 1987 WL 11098, at *4 (Ohio App. 8th Dist. May 14, 1987). Because Parris's statements regarding Kettering's performance and behavior were made to the Commission and in response to the Commission's request, they are absolutely privileged. Therefore, Kettering's defamation claim against Parris must fail.