**Marlene FITZPATRICK,**
**Plaintiff–Appellant,**

v.

**William J. HENDERSON, Postmaster General, U.S. Postal Service,**
**Defendant–Appellee.**

No. 01–3761.

United States Court of Appeals, Sixth Circuit.

Dec. 23, 2002.

Before GUY and BOGGS, Circuit Judges; and EDMUNDS, District Judge.*

PER CURIAM.

Plaintiff, Marlene Fitzpatrick, appeals from the grant of summary judgment in favor of defendant. William J. Henderson, Postmaster General, U.S. Postal Service, in this Title VII retaliation action. 42 U.S.C. § 2000e–16(a). Fitzpatrick chal-

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

lenges the district court's ruling that she did not suffer an adverse employment action. After reviewing the arguments, the record, and the applicable law, we affirm.

## I.

Fitzpatrick was employed by the Postal Service in 1969. In 1996, she filed an Equal Employment Opportunity (EEO) complaint alleging that she was denied an assignment because of her American Indian race. Fitzpatrick then applied for a postmaster position in Fremont, Ohio. She filed a second EEO complaint claiming retaliation when she was required to interview for that position. After Fitzpatrick became the postmaster in Fremont at a salary grade level 21, the parties resolved the two EEO complaints. Under the settlement agreement, Fitzpatrick began a 90–day detail assignment in Warren, Ohio at a salary grade level 22. Her annual salary rate during the detail was $66,285, rather than her previous rate of $63,728.

Prior to the end of the detail assignment, Fitzpatrick's Warren supervisor, Gloria Tolliver, asked to extend it for an additional 90 days. James Johnston, the district manager, denied the extension, and Fitzpatrick returned to her salary grade level 21 position in Fremont. Fitzpatrick then filed the third EEO complaint, which is the subject of this action, claiming that she was denied the extended detail in Warren in retaliation for the prior two EEO complaints.

Fitzpatrick testified in the EEO hearing that Johnston told her he denied the extension because of the "one year requirement for newly promoted." He also told her he was returning her to Fremont because "it wasn't fair to the employees there in Fremont or the community."

When asked why Fitzpatrick's detail assignment in Warren was terminated, John-ston stated in his EEO Investigative Affidavit:

> The complainant's OIC assignment was for 90 days only. The complainant agreed to the settlement voluntarily and affixed her signature. Accordingly, the complainant was fully aware that her assignment would end at the expiration of 90 days. Moreover, the complainant was a newly appointed postmaster in her home office and had not satisfied the one year requirement of serving in her present postmaster position prior to being reassigned or promoted. Also, postmasters are expected to identify with & be appropriately involved in the communities they serve. Absent the complainant's previous EEO settlement, she would have been required to be in her home office for (1) year as all other postmasters. Operationally it was a good business decision to return the complainant to her assignment of record. Her previous EEO activity had no bearing on her appointment ending.

At the EEO hearing, Johnston explained why he denied the extension:

> I denied it because Marlene had just recently been promoted to Fremont, Ohio. It was a level 21 office. She had been there for a period of six months. In my opinion, she had a responsibility to not only the employees in Fremont, Ohio but to the community in Fremont, Ohio as the installation head and as a representative of the United States Postal Service to go back into Fremont and take care of a new building project, 2.8 million dollar building project for a new facility in Fremont that was coming on line. . . .
>
> In addition to that, the Postal Service has a policy that newly appointed Postmasters are not normally taken out of their office and put on an assignment

until they have been in the new position for a period of one year.

Johnston said he told Tolliver that Fitzpatrick "was placed in Warren as a result of the EEO settlement" and that Fitzpatrick "got exactly what she had asked me for." He said that Fitzpatrick had "an obligation to the people in Fremont to go back there as their installation head, she had responsibility to the local community to get back there, run her office which she had asked for and she had a responsibility to go back to make sure that 2.8 million dollar project was running smoothly." Tolliver testified that Johnston told her he denied the extension "because it had been an EEO settlement and they had agreed that she would remain in the position for 90 days and that would be it. He asked me to get her off of his back."

Four months after the end of the Warren detail assignment, Fitzpatrick was promoted to a salary grade level 22 postmaster position in Dodge City, Kansas. This action was filed on May 4, 2000. The district court granted summary judgment to defendant, finding that Fitzpatrick did not suffer an adverse employment action. This appeal followed.

## II.

We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) defendant knew of the protected activity, (3) defendant took an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. If plaintiff establishes this *prima facie* case, the burden shifts to defendant to articulate legitimate, nondiscriminatory reasons for the employment decision. Plaintiff must then demonstrate that the proffered reasons were "not the true reason." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir.2000). To establish pretext, plaintiff must show by a preponderance of the evidence that the proffered reasons had no basis in fact, did not actually motivate the employment decision, or were insufficient to motivate the employment decision. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). Plaintiff bears the burden of persuasion throughout the entire process. *Morris*, 201 F.3d at 793.

The district judge found that Fitzpatrick did not establish the third element of a *prima facie* case. He held there was no adverse employment action because Fitzpatrick's salary was not reduced. Instead, she received the agreed-upon temporary, 90–day salary increase. The reduction of her salary at the end of the detail assignment pursuant to the settlement agreement by itself is not an adverse employment action. But Fitzpatrick argues that she suffered an adverse employment action because she was also denied the opportunity to *extend* the detail assignment with its different responsibilities and increased salary. *See Hunt v. City of Markham*, 219 F.3d 649, 654–55 (7th Cir.2000) (denial of temporary promotion at a higher rate of pay may constitute an adverse employment action). Whether this constitutes an

adverse employment action is a close question. We need not resolve it, however, because plaintiff did not establish pretext even if we were to find that she established a *prima facie* case of retaliation.

Johnston offered the following reasons for denying the extension: (1) Fitzpatrick needed to return to serve the Fremont community and employees, (2) Fitzpatrick needed to return because of the Fremont construction project, and (3) a policy required postmasters to remain in their positions for one year before being assigned or promoted. Fitzpatrick failed to show by a preponderance of the evidence that these proffered reasons had no basis in fact or did not actually motivate, or were insufficient to motivate, the denial of the extended detail assignment.

Fitzpatrick first argues Johnston's contradictory statements establish pretext. Johnston told Tolliver that he did not extend the assignment because the settlement agreement only required a 90–day assignment. Fitzpatrick asserts that Johnston later contradicted himself when he admitted in a deposition that the settlement agreement did not require him to deny the extension. None of the evidence indicates that Fitzpatrick ever stated he felt compelled to deny the extension by the settlement agreement. Instead, he only stated that the settlement agreement did not require him to *grant* the extension. Johnston's statements regarding the settlement agreement do not establish pretext.

Fitzpatrick next claims Johnston gave "shifting" reasons. Fitzpatrick argues that Johnston told Tolliver he denied the extension because of the settlement agreement but later gave different reasons in his deposition and EEO testimony. Fitzpatrick, however, testified that Johnston told her he denied the extension because of the one-year policy and the needs of the Fremont community and employees. Even if Johnston did not give Tolliver all his reasons, which he was not required to do, Johnston's later explanations of the reasons for his decision are supported by Fitzpatrick's own testimony.

Fitzpatrick also argues that the one-year policy relied on by Johnston did not apply to temporary detail assignments. Fitzpatrick presented evidence that creates a question of fact as to the scope of the official postal policy. This, however, does not establish pretext. Even if Johnston misunderstood the official postal policy, the undisputed evidence shows that it was Johnston's interpretation of the policy and his general practice to deny temporary detail assignments in the first year of a postmaster's assignment.

Fitzpatrick further claims that other employees were given detail assignments before serving one year in a postmaster position.[1] Johnston described this policy as a "general guideline." He testified that he could have granted a temporary assignment to Fitzpatrick in her first year even without a settlement agreement for "other reasons." There was no evidence offered as to the reasons behind the other employees' assignments. Thus, that some employees may have been given detail assignments within the one-year period does not

---

1. Fitzpatrick points to three employees: Beth Brenkle, Benita Brose, and Traci Gibson. There was no evidence offered that Johnston approved Gibson's detail, and Johnston testified that it was not inconsistent with his practice because she was not absent from her position for extended periods of time. Johnston testified that Brenkle's assignment was not a blatant violation of his policy because the detail assignment occurred near the end of the one-year period. Johnston did not remember approving Brose's detail assignment, although Jeanette Jensen testified he approved it.

establish pretext in the denial of Fitzpatrick's extended detail.

This is particularly true because Johnston did not deny the extension solely based on his one-year policy. He also denied it also because of the special needs and circumstances of the Fremont Post Office. Fitzpatrick argues these other reasons are false by challenging Johnston's business judgment. She claims that she effectively met her responsibilities in Fremont while working in Warren, and that her role in Fremont's construction project was not critical. These arguments represent, at best, "[d]isputation of the facts underlying [the defendant's] legitimate business reason," which this court has recognized is "not sufficient to carry [the plaintiff's] burden." *Gribcheck v. Runyon,* 245 F.3d 547, 552 (6th Cir.2001) (quoting *Irvin v. Airco Carbide,* 837 F.2d 724, 726 (6th Cir.1987)). Because Fitzpatrick has not shown that defendant's legitimate, nondiscriminatory reasons for the denial of the detail extension were pretextual, defendant is entitled to summary judgment on other grounds. *See Boger v. Wayne County,* 950 F.2d 316, 322 (6th Cir.1991) (this court may affirm summary judgment even on grounds not considered by the district court).

AFFIRMED.