NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0072n.06
Filed: January 31, 2005

No. 03-4195

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **VICKI STEINER**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **WILLIAM J. HENDERSON,** Postmaster General, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |
| | ) | |

BEFORE:     NELSON and COLE, Circuit Judges, and SARGUS,[*] District Judge.

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-appellant Vicki Steiner claims that her employer, the United States Postal Service ("USPS"), retaliated against her for filing claims of discrimination in federal district court. The alleged retaliatory conduct consisted of USPS posting her permanent position as "open" while she was on a temporary assignment, denying her advanced sick leave, and changing the frequency and nature of medical reporting requirements during her sick leave. The district court found that none of these claims constituted "adverse employment actions" under Title VII, and that even had the actions qualified as "adverse employment actions," Steiner had failed to show sufficiently that the USPS's reasons for taking these actions were related to her

---

[*]The Honorable Edmund A. Sargus, United States District Judge for the Southern District of Ohio, sitting by designation.

filing of EEOC and district court claims. Accordingly, the district court granted summary judgment to the defendants. Because the district court's decision on causation was correct, we **AFFIRM** the judgment of the district court.

**I.**

Steiner has been an employee of the USPS since 1979. In 1997, she received a promotion to the position of Manager of Distribution Operations ("MDO") for the weekday afternoon/evening shift ("Tour III") at the Canton, Ohio mail processing plant. In April 1998, Judson Zernechel became the new Canton plant manager, and thus Steiner's supervisor. Over the course of the next two years, Zernechel sent Steiner on several temporary assignments at nearby branch locations. On October 4, 2000, Zernechel informed Steiner that she was being reassigned to the Canton plant, in the position of MDO, Tour I (midnight-8AM shift), "in training." Zernechel claimed that the purpose of the placement was to ensure that Steiner understood how problems occurring on the Tour III shift impacted the Tour I shift. The position of "MDO in training" is not mentioned in any official USPS policy. At the same time, Al Restivo, who had formerly been an MDO, Tour I, was assigned to Steiner's former MDO, Tour III position.

Upset about her reassignment, Steiner first took several weeks of accrued vacation, and then took sick leave following a diagnosis of panic anxiety related to working the night shift at Canton. In January 2001, she filed a complaint with the EEOC, alleging that her reassignment was due to gender-based discrimination. The complaint was dismissed as untimely by the local EEOC office. The EEOC's finding of untimeliness was later upheld by both the district court and this Court, both

of which denied Steiner relief. *Steiner v. Henderson*, 194 F. Supp. 2d 688 (N.D. Ohio 2002); *Steiner v. Henderson*, 354 F.3d 432 (6th Cir. 2003).

The complaint in Steiner's prior federal action was served upon USPS on June 4, 2001. Just over two weeks later, Zernechel sent Steiner three letters. The first letter noted that her most recent medical documentation had stated she would return to work by June 18, and that she had failed to submit sufficient documentation for continued sick leave. Steiner claims the letter altered the way she was to report her medical documentation regarding her still-ongoing sick leave, requiring her to report directly to Zernechel every two weeks, rather than to his office monthly as had previously been the case. *Id*. The second letter informed Steiner that her accrued sick leave was about to expire, and that she would need to apply to Zernechel to get "advance sick leave." The final letter informed Steiner that Restivo was retiring, and that Zernechel was "offering [her] an opportunity to transfer to Tour III as the MDO." The letter also mentioned that Steiner would be required to complete a retraining program prior to returning to Tour III, without mentioning any details of the program.

Steiner claims that she later asked her EEOC counselor (who had previously dismissed her untimely EEOC complaint) to request advanced sick leave from Zernechel, and that the counselor told her that Zernechel had denied her request. Zernechel claims that neither Steiner nor the counselor ever contacted him, and that, if either had, he likely would have granted the request for advanced leave. However, Zernechel stated that since he was not contacted, Steiner was never granted advance sick leave. Since sometime that July (the exact dates are unclear in this regard but

are irrelevant to the substance of this appeal), Steiner has thus been on "leave without pay" ("LWOP") status.

On August 2, 2001, Zernechel again sent Steiner a letter noting that she could transfer back to the MDO, Tour III position due to Restivo's retirement. The letter noted that Steiner had not responded to Zernechel's previous letter on the subject, and that failure to respond by August 14 would indicate to him that she was "satisfied with [her] present assignment as the MDO Tour I . . . ." *Id.* On August 6, Steiner's attorney sent Zernechel a letter stating that there was no need for Steiner to "accept a reassignment" to the MDO, Tour III position, because Steiner had never been formally transferred out of that position, and that "therefore, no response to your offer is necessary."

When the USPS hires someone to do a particular job, that job is noted on a "Form 50" as the employee's "bid position." When an employee is on temporary duty away from her bid position, that job is generally held open. A local union president testified that no bid position is ever supposed to be changed without the consent of the employee. Steiner's attorney thus implicitly claimed in her letter that since Steiner's bid position had never been changed from MDO, Tour III, this was still her permanent position, despite any temporary assignment to Tour I. Despite the letter, and after over a year of Steiner's being on leave, on March 20, 2002, the USPS filled the MDO, Tour III position with another employee.

Steiner then filed another EEOC grievance in the spring of 2002, alleging that Zernechel had retaliated against her for filing her initial EEOC complaint. When the EEOC decided to take no action on her claim, she filed the instant action, claiming retaliatory adverse employment actions under 42 U.S.C. § 2000e-3. The retaliatory actions she alleged were (1) an alteration in her medical

documentation requirements, (2) the denial of advanced sick leave, and (3) the posting of her "bid

position" as open.  The district court granted summary judgment on August 28, 2003, finding both

that Steiner had failed to demonstrate an adverse employment action, and that even if she had done

so, she had not established a causal connection between the employment actions at issue and

Steiner's filing of her EEOC or district court complaints.  This timely appeal followed.

## II.

We review district court grants of summary judgment *de novo*.  *See, e.g., Mich. Bell Tel. Co.

v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 433 (6th Cir. 2003).  In order to make a *prima facie*

case of Title VII retaliation, a plaintiff must prove: "(1) [s]he engaged in activity protected by Title

VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took

adverse employment action against the plaintiff; and (4) there was a causal connection between the

protected activity and the adverse employment action."  *Ford. v. Gen. Motors Co.*, 305 F.3d 545,

552-53 (6th Cir. 2002).

Neither party disputes that the filing of an anti-discrimination lawsuit is protected activity,

nor that USPS knew of the lawsuit at the time that Zernechel sent the three letters at issue.[1]  As a

result, the only disputes before us regarding the *prima facie* case are whether or not Zernechel's

letters constituted adverse employment actions and whether or not Steiner has sufficiently shown

---

[1]At oral argument, USPS did note that there was no evidence that Zernechel personally knew of the lawsuit at the time he sent the letters.  However, since we find that Steiner has not shown causation, we need not address here whether a *prima facie* case for retaliatory discrimination could be proven if the employer was aware of the protected conduct at issue but the supervisor taking the adverse actions was not.

a causal connection between the filing of her lawsuit (or service of her complaint upon USPS) and the three letters.

Regarding the causal connection, "a plaintiff is required to proffer evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely reason for the adverse action. Accordingly, at the *prima facie* stage, the burden is minimal . . . ." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quotations and citations omitted).

Steiner claims that "[t]emporal proximity between the protected conduct and the adverse action is sufficient to establish the causal connection." Br. of Appellant at 26 (citing *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001) and *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)). In support of this statement, Steiner cites one sentence from *Gribcheck*: "Gribcheck showed that his [discrimination-based] litigation was ongoing at the time of his suspension, thereby establishing the fourth prong of his prima facie case." 245 F.3d at 547. However, Steiner's claim as to the state of the law in this Circuit appears to be an incorrect statement of Sixth Circuit law. Numerous Sixth Circuit cases have noted that temporal proximity alone is often insufficient to prove the causal prong of the *prima facie* case. *See, e.g., Nguyen v. City of Cleveland*, 229 F.3d 559, 565-567 (6th Cir. 2000) ("[Plaintiff] argues that this Circuit follows a rule that temporal proximity between the protected activity and the alleged discriminatory act is alone sufficient to establish a causal connection. . . . [Plaintiff] misstates the law of this Circuit."); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation."); *see also, e.g., Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.

1999) ("The causal connection . . . may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint *and* by showing that he was treated differently from other employees." (emphasis added)); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (holding that evidence on causation must be "sufficient to raise the inference that [plaintiff's] protected activity was the likely reason for the adverse action." (quotations and citations omitted)); *Harrison v. Metropolitan Gov't of Nashville*, 80 F.3d 1107, 1118-19 (6th Cir. 1996) (considering other evidence in conjunction with temporal proximity before finding causation), *abrogated on other grounds as recognized by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 n.6 (6th Cir. 1999). *But see Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554-55 (6th Cir. 2002) (arguably finding temporal proximity sufficient to show causation, though also arguably considering additional evidence of causation); *Gribcheck*, 245 F.3d at 551 ("Gribcheck showed that his [discrimination-based] litigation was ongoing at the time of his suspension, thereby establishing the fourth prong of his prima facie case."); *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (stating that "proximity in time between protected activity and adverse employment action may give rise to an inference of causal connection," but also noting that "temporal proximity alone will not support an inference in the face of compelling evidence [otherwise.]").

It is well-settled law that a later Sixth Circuit three-judge panel may not overrule an earlier one. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). Thus, to the extent that Steiner claims *Ford*, *Gribcheck*, or any out-of-circuit case held that temporal proximity alone is *always* sufficient to prove this prong, this cannot be the law of this Circuit, in light of *Nguyen* and *Cooper*, among other cases. However, even if one interprets the prior caselaw as holding, *in toto*,

that temporal proximity alone can be sufficient to support such an inference only when there is no

compelling evidence to the contrary, *see, e.g., Moon*, 836 F.2d at 229, Steiner would not prevail

here, since USPS has provided compelling alternate causal explanations for the letters' timing.

USPS notes convincingly that the letters were written because Steiner's sick leave was

expiring and because Restivo, who had been acting MDO, Tour III, was retiring. As a result, in order

to meet the causation prong of the *prima facie* case, Steiner must provide some other evidence,

beyond temporal proximity, evincing a causal connection between her anti-discrimination litigation

and Zernechel's three letters.

Though Steiner incorrectly claims that temporal proximity is sufficient to show causation,

she does attempt to discuss additional evidence. She first claims that other employees were treated

differently than she was. *See, e.g. Moore*, 171 F.3d at 1080 (holding that such treatment, including

more frequent discipline for trivial infractions and unwarranted criticism of plaintiff's work, when

considered in addition to temporal proximity, is sufficient to meet this prong). However, the only

disparate treatment she alleges was the fact that she was transferred to Tour I with the "MDO in

training" title, where a male employee was transferred to an MDO position at the same time without

being labeled "in training." Notwithstanding the fact that Steiner does not show that the male

employee was not more qualified than she (and thus not as deserving of training as she was), this

action occurred *before* Steiner filed her discrimination complaint. Indeed, this action was the *subject*

of her discrimination complaint. As a result, this "different treatment" could not possibly have

resulted from her filing of either the EEOC or district court complaints, since it occurred before

those complaints. It thus does not in any way support a finding that Zernechel's adverse actions were motivated by the filing or service of either complaint.

Steiner also complains that no other employees were ever required to undergo retraining before returning from sick leave to an MDO position. However, she does not provide any evidence to support this claim. Even if she had, however, at the time of Zernechel's letter to her, Steiner had been away from all MDO positions (via temporary assignments and then sick leave) for over three years. Steiner did not provide any evidence of any other employees who had been away from their positions for significant portions of time who did not require retraining, nor did she provide any evidence that nothing had changed in the interim or that she was still qualified for the MDO, Tour III position. As a result, Steiner here has not provided any evidence, beyond a mere claim, that other employees were treated differently than she was, nor has she provided any evidence that would tend to show that her retraining was not necessary.

In considering causation, the district court did evaluate some additional evidence provided by Steiner as to Zernechel's and USPS's retaliatory intent. This evidence mostly consisted of statements by co-workers that Zernechel did not like Steiner. However, none of this evidence evinces any sort of retaliatory intent. None of these statements mention Steiner's EEOC or district court filings, nor is the timing of the statements at all clear; indeed some of the statements were certainly made prior to Steiner's filings. *See, e.g.*, J.A. 244-45. As a result, even taking this evidence into account, Steiner has not provided any evidence beyond temporal proximity to show that the actions taken by Zernechel were caused by her EEOC or district court filings. In contrast, USPS has provided reasonable explanations for the letters' timing.

While the *prima facie* case is "a burden easily met," *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987), a plaintiff must provide *some* evidence beyond temporal proximity to demonstrate a retaliatory causal connection, especially where a defendant provides compelling evidence of alternative causation. *See Nguyen*, 229 F.3d at 565-567; *Moon*, 836 F.2d at 229. Steiner has failed to do so. As a result, she has not met the causality prong of her *prima facie* case with regard to Zernechel's actions in the summer of 2001. Therefore, we need not determine if the actions in this case qualify as "adverse employment actions."

### III.

For the preceding reasons, the summary judgment of the district court is **AFFIRMED.**